IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| APPLIED UNDERWRITERS, INC., a Nebraska Corporation;<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TOP'S PERSONNEL, INC., A New Jersey Corporation;<br><br>　　　　　Defendant. | **8:15CV90**<br><br>**FINDINGS RECOMMENDATION AND ORDER** |

This matter is before the court on Defendant's motion to dismiss or alternately motion to stay. ([Filing No. 27](#)). Defendant argues Plaintiff is bound by an arbitration agreement, and the court must either dismiss the action or send it to arbitration and stay the case. For the following reasons, the motion will be denied.

BACKGROUND

In December of 2011, Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA") entered into a Reinsurance Participation Agreement ("Reinsurance Agreement") with Top's Personnel Inc. ("TPI"). ([Filing No. 17 at CM/ECF p. 3](#)). The Reinsurance Agreement expressly states the agreement is "made and entered into by and between" AUCRA, TPI, Bay Personnel, Inc. and other entities listed in Schedule A to the agreement.[1] ([Filing No. 30-1 at CM/ECF p. 3](#)). The Reinsurance Agreement contains an arbitration provision which reads in pertinent part:

> . . . All disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management or operations of the Company, or (3) any other breach or

---

[1] Schedule A which is attached to the Reinsurance Agreement contains a list of 22 corporations who were additional parties to the Reinsurance Agreement—none of which are involved in this matter. (See [Filing No. 30-1 at CM/ECF p. 9](#)).

claimed breach of this Agreement or the transactions contemplated herein shall be settled amicably by good faith discussion among all of the parties hereto, and, failing such amicable settlement, finally determined exclusively by binding arbitration in accordance with the procedures provided herein. . . . All disputes arising with respect to any provision of this Agreement shall be fully subject to the terms of this arbitration clause.

(Filing No. 30-1 at CM/ECF pp. 5–6). At some point, TPI began to fall behind on its obligation under the Reinsurance Agreement

On May 15, 2014, TPI executed a promissory note in favor of Applied Underwriters Inc. ("AUI"). In the Note, TPI "acknowledge[d] its indebtedness (including workers' compensation premiums) to [AUI] and its affiliates and subsidiaries" and promised to pay the principal sum of $119,645.13 together with interest. (Filing No. 1-1 at CM/ECF p. 7).[2] The parties to the Note were AUI, TPI and the additional 20+ corporations that were parties to the Reinsurance Agreement. AUCRA was not a party to the Note. The Note did not contain an arbitration provision. Eventually TPI fell behind on its payments on the Note.

AUI and Applied Risk Services ("ARS") filed their Complaint against TPI in February of 2015. (Filing No. 1-1). The initial Complaint alleged two counts. The first count alleged TPI breached its obligations to AUI under the Note. The second count alleged TPI breached its obligations to ARS under the Reinsurance Agreement.

Although ARS was listed as the billing agent on the Reinsurance Agreement, the court determined ARS was not a party to the Reinsurance Agreement and ordered ARS to show it was a party in interest, assignee, or authorized agent capable of filing suit on AUCRA's behalf. (Filing No. 22). Thereafter, Plaintiff AUI filed an amended complaint

---

[2] According to the Defendant, the principal amount was equivalent to TPI's overdue obligations under the Reinsurance Agreement as the date of the Note. (Filing No. 28 at CM/ECF p. 6).

2

omitting ARS and the second count of the original complaint. The amended, and now operative, complaint alleges that TPI and AUI entered into the Promissory Note "for good and valuable consideration" and TPI failed to make the required payments under the Note. (Filing No. 23). The only count in the amended complaint alleges a breach of the Note: The amended complaint does not rely on (or even mention) the Reinsurance Agreement. (See Id.).

Citing the arbitration provisions contained in the Reinsurance Agreement, TPI now moves to dismiss or otherwise stay AUI's claim against it pending arbitration.

LEGAL ANALYSIS

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." AT & T Technologies v. Communications Workers of Am., 475 U.S. 643, 648 (1986); see also Churchill Environmental and Indus. Equity Partners, L.P. v Ernst & Young, L.L.P., 643 N.W.2d 333, 336 (Minn. Ct. App. 2002)(citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 242 F.3d 780, 782 (8th Cir. 2001)). The court must first decide whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649.

Arbitration is "a matter of consent, not coercion." Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 479 (1989). Accordingly, if a party has not "agreed to arbitrate, the courts have no authority to mandate that they do so." Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006); see also Employers Ins. of Wausau v. Bright Metal Specialties, 251 F.3d 1316, 1322 (11th Cir. 2001).

The arbitration provision at issue is located in the Reinsurance Agreement. While there were more than 20 corporations listed as parties to that agreement, Plaintiff AUI was not one of them. (See Filing No. 30-1 at CM/ECF pp. 3, 9).

A signatory may bind a non-signatory to an arbitration agreement through common law principles of contract and agency law. See Nitro Distrib., 453 F.3d 995 (examining agency and contract principles to determine whether a non-signatory was bound to arbitration); World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240 (11th Cir. 2008) (examining different theories to determine whether a company can bind its affiliates in contract); Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 47 (2d Cir. 1993) (examining contract law to determine whether a non-signatory may be bound to an arbitration agreement); A.T. Massey Coal Co. v. International Union, United Mine Workers, 799 F.2d 142 (4th Cir. 1986) (examining agency law to determine whether a company can bind its parent and affiliates to arbitrate). Courts recognize several distinct theories under which a non-signatory may be bound including "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." World Rentals, 517 F.3d at 1244; see also Simmons Foods, Inc. v. H. Mahmood J Al-Bunnia & Sons Co., 634 F.3d 466, 469 (8th Cir. 2011).

In essence, Defendant TPI argues that AUI should be bound to the Reinsurance Agreement through agency, a piercing of the corporate veil, and incorporation by reference.

Defendant argues Plaintiff is bound to the arbitration provision's terms within the Reinsurance Agreement as an affiliate of AUCRA. (See Filing No. 31 at CM/ECF pp. 2–3). Defendant directs the court to Paragraph 19 of the Reinsurance Agreement which states:

4

> Participation by [TPI] in this Agreement is subject to the prior written consent of the [AUCRA]. Nothing in this Agreement, expressed or implied, is intended to confer upon any party, <u>other than the parties hereto and their affiliates</u>, successors and assigns, <u>any rights, remedies, obligations or liabilities</u> under or by reason of this Agreement, except as expressly provided herein.

([Filing No. 29 at CM/ECF p. 6](#))(emphasis added). Defendant argues this clause within the Reinsurance Agreement effectively binds AUCRA's affiliates—specifically AUI—to the obligations and liabilities of the Reinsurance Agreement, including the arbitration provision.

Even if the court interprets Paragraph 19 as argued by Defendant,[3] the paragraph is meaningless if AUCRA lacked the legal authority to bind AUI to the contract. See [DK Joint Venture 1 v. Weyand, 649 F.3d 310, 319 (5th Cir. 2011)](#) (citing [Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 445 (3d Cir. 1999)](#) ("under traditional agency principles, [unless one agrees to be personally bound,] the only other way . . . [one] can be bound by the terms of a contract is if she is made a party to the contract by [another] acting on her behalf with actual, implied, or apparent authority.")). Generally, a corporate relationship is not enough to bind a non-signatory to an arbitration agreement. [Zurich Am. Ins. Co. v. Watts Indust., 417 F.3d 682 (7th Cir. 2005)](#); [De Jesus v. Sears, Roebuck & Co., 87 F.3d 65 (2d Cir. 1996)](#). Corporate affiliates are typically created to <u>separate</u> the businesses, liabilities and contracts of each—a contract with one corporation is not a contract with any other corporate affiliates. [In re Merrill Lynch Trust Co. FSB, 235 S. W.3d 185, 191 (Tex. 2007)](#)(emphasis added); see also [ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, 133 F.3d 664, 669 (8th Cir. 1998)](#). A non-signatory may be compelled to arbitrate when the signatory signed the arbitration agreement as the non-signatory's agent. [World Rentals, 517 F.3d at 1247](#); see also

---

[3] The court notes that the meaning of Paragraph 19 is far from clear: Plaintiff also cited this paragraph for the opposite proposition. (See [Filing No. 29 at CM/ECF p. 6](#)).

Simmons Foods, 634 F.3d at 469. In addition, a non-signatory may be compelled to arbitrate if it so dominated a signatory as to pierce the corporate veil. World Rentals, 517 F.3d at 1248.

Defendant has presented no evidence that AUCRA had actual, implied, or apparent authority to bind AUI to the Reinsurance Agreement and its provisions, or that the corporate relationship between AUI and AUCRA was sufficiently close or the formalities were disregarded such that the corporate veil can be pierced or that the two entities acted as each other's alter ego. Based on the record, AUI is the indirect parent of AUCRA. (See Filing No. 20 at CM/ECF p. 2).

Defendant further argues the Reinsurance Agreement and Note are "so connected" that this court must apply the arbitration provision to the current dispute. The court construes this argument to mean Defendant believes the Note incorporates the Reinsurance Agreement.[4]

A non-signatory to contract may be bound by its terms if it enters into a separate contractual agreement with the signatory which incorporates the existing arbitration provision. World Rentals, 517 F.3d at 1244. When determining whether an arbitration provision was incorporated, many courts have held that the new agreement must either incorporate by reference the entire previous contract, or must expressly incorporate the portion containing the arbitration provision. Id. at 1244–45; J.S. & H Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212 (5th Cir. 1973) (finding the

---

[4] To the extent Defendant is arguing the Note and Reinsurance Agreement were merged into a single contract, this court disagrees. Contracts will only be merged where they are between the same parties and embrace the same subject matter. Walsh v. Lanney, 106 N.W. 447 (Neb. 1905). As mentioned above, the parties to the Note and Reinsurance Agreement were not the same—a fact which Defendant admits in part of its argument. Filing No. 28 at CM/ECF p. 7. And there is no evidence of AUI or AUCRA's authority to bind one another in contract.

6

arbitration provision had been incorporated where the new contract incorporated the "General Conditions" in which the provision was located).

In this case, the Note neither directly references the Reinsurance Agreement nor incorporates any of its terms. The Note itself does not mention arbitration. In fact, it expressly provides that the parties consent to the personal jurisdiction of any state or federal court situated in Douglas County, Nebraska. Therefore, this court cannot find that the provisions of the Reinsurance Agreement, especially the arbitration provision are incorporated into the Note.

Finally, Defendant asserts Plaintiff is alleging its claim arises from the Note as a mere ploy to avoid arbitration. Defendant argues Plaintiff's claim actually arises from the Reinsurance Agreement because the amount on the Note "arises from and/or relates to" Defendant's past due obligations on the Reinsurance Agreement. Defendant argues the language used within the Note clearly indicates the amount guaranteed by the Note stems from the premiums owed under the Reinsurance Agreement.[5]

The court disagrees. Plaintiff was not a party to the Reinsurance Agreement—a fact which Defendant has admitted. (See [Filing No. 28 at CM/ECF p. 7)](). Therefore much like ARS, AUI would be required to show standing to proceed with any argument arising from the Reinsurance Agreement. But most importantly, Plaintiff's complaint clearly alleges that Defendant's breach of the Note, a valid agreement entered into by the parties, forms the basis of its claim. Defendant would have Plaintiff and the court completely ignore the Note's existence simply to reach arbitration.

---

[5] Defendant is referring to the Note's language that "[AUI] through its affiliates and subsidiaries provided workers' compensation insurance to Top's Personnel" and "acknowledging its indebtedness (including workers' compensation premiums) to Applied Underwriters, Inc. and its affiliates and subsidiaries."

7

While courts must apply the "liberal federal policy favoring arbitration agreements," an agreement must exist. Defendant has not provided sufficient evidence to show a valid agreement to arbitrate between Plaintiff and Defendant. Accordingly, Defendant's motion must be denied.

IT IS THEREBY ORDERED

THE COURT HEREBY ORDERS: to Dismiss or in the Alternative Stay Pending Arbitration, ([filing no. 27](filing no. 27)), is denied.

IT IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to [28 U.S.C. § 636(b)](28 U.S.C. § 636(b)), that the motion to dismiss filed by the defendant ([filing no. 27](filing no. 27)), be denied in its entirety

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 26th day of May, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge