IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| APPLIED UNDERWRITERS, INC., a Nebraska Corporation;<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>TOP'S PERSONNEL, INC., A New Jersey Corporation;<br><br>　　　　　　　　Defendant. | **8:15CV90**<br><br>**MEMORANDUM AND ORDER** |

　　This matter is before the court on the motion to compel filed by Defendant Top's Personnel Inc. ("Top's Personnel"). (Filing No. 46). For the following reasons, the motion will be granted in part and denied in part.

BACKGROUND

　　In December of 2011, Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA") entered into a Reinsurance Participation Agreement ("Reinsurance Agreement") with Top's Personnel. (Filing No. 17 at CM/ECF p. 3). Plaintiff Applied Underwriters Inc. ("Applied Underwriters") was not a party to the Reinsurance Agreement. On May 15, 2014, Top's Personnel executed a promissory note ("the Note") in favor of Applied Underwriters. In the Note, Top's Personnel "acknowledge[d] its indebtedness (including workers' compensation premiums) to [Applied Underwriters] and its affiliates and subsidiaries" and promised to pay the principal sum of $119,645.13

together with interest. (Filing No. 1-1 at CM/ECF p. 7).[1] AUCRA was not a party on the Note.

In February of 2015, Applied Underwriters and Applied Risk Services ("ARS") filed a Complaint against Top's Personnel. (Filing No. 1-1). The initial Complaint alleged two claims. The first alleged Top's Personnel breached its obligations to Applied Underwriters under the Note. The second alleged Top's Personnel breached its obligations to ARS under the Reinsurance Agreement.

The court determined ARS was not a party to the Reinsurance Agreement. (Filing No. 22). Thereafter, Plaintiff Applied Underwriters filed an amended complaint omitting ARS and the second cause of action from the original complaint. The amended complaint alleges that Top's Personnel and Applied Underwriters entered into the Note "for good and valuable consideration" and Top's Personnel failed to make the required payments under the Note. (Filing No. 23). Applied Underwriters alleges that Top's Personnel owes $126,488.45 under the Note plus accruing interest. (Id.).

In April of 2016, Top's Personnel moved to dismiss or otherwise stay Plaintiff's claim and compel arbitration, citing an arbitration clause within the Reinsurance Agreement. (Filing No. 27). The court determined Applied Underwriters was not a party to the Reinsurance Agreement nor did it appear to be legally bound to the Reinsurance Agreement or the specific arbitration provision within it. (Filing No. 34). Specifically, the court found there was

> no evidence that AUCRA had actual, implied, or apparent authority to bind [Applied Underwriters] to the Reinsurance Agreement and its provisions, or that the corporate relationship between [Applied Underwriters] and AUCRA was sufficiently close or the formalities were disregarded such

---

[1] Top's Personnel maintains that the principal amount was equivalent to its overdue obligations under the Reinsurance Agreement as the date of the Note.

> that the corporate veil can be pierced or that the two entities acted as each other's alter ego.

(Filing No. 34 at CM/ECF p. 6). The court denied Top's Personnel's motion.

On August 8, 2016, this Court entered its order for the final progression of this case in accordance with the parties' Rule 26(f) report. (Filing Nos. 38 & 39). The Court ordered that the deadline for completing written discovery was November 30, 2016. (Filing No. 39 at CM/ECF p. 2). Top's Personnel served its First Set of Interrogatories and Document Requests upon Plaintiff on September 22, 2016. Among other requests, the defendant's Interrogatories and Document Requests sought specific information and documents concerning the Reinsurance Agreement, the relationship between the Note and the Reinsurance Agreement, and the corporate relationship between AUCRA and Applied Underwriters. Defendant received Plaintiff's responses on December 12, 2016.[2]

Top's Personnel believed Applied Underwriters' responses to its discovery were incomplete, and in accordance with Fed. R. Civ. P. 37(a)(2)(A) and NECivR 7.0.1(i), the parties conferred in an effort to resolve their disputes. On December 29, 2016, the defendant sent a meet-and-confer letter to Plaintiff's counsel. (Filing No. 48-1 at CM/ECF p. 66). Plaintiff responded by letter on January 6, 2017, supplementing some of the discovery in dispute. (Id. at p. 72). Top's Personnel argues that Applied Underwriters' answers remain inadequate and filed the instant motion on January 17, 2017.

In the motion, Top's Personnel seeks to compel Applied Underwriters to fully answer Interrogatories 2, 3, 4, 5, 6, 7, 11, & 15 and to supplement its document production. Regarding document production, Top's Personnel claims Applied

---

[2] Applied Underwriters argues that Top's Personnel misrepresents this date and that its Responses to the Requests for Production were timely served on November 30, 2016 and Answers to Interrogatories were served on December 13, 2016. But according to the exhibits filed by the parties, both of Applied Underwriters' responses were signed, certified, and sent via US mail on December 9, 2016. (See Filing No. 48-1 at CM/ECF pp. 41, 56; Filing No. 72-2 at CM/ECF p. 13; Filing No. 72-4 at CM/ECF p. 8).

Underwriters has failed to produce any correspondence regarding the Promissory Note, Reinsurance Agreement, and any negotiations between the parties. (Filing No. 47 at CM/ECF pp. 11–12). Finally, the defendant seeks to take the deposition of Plaintiff's Counsel, Jeffrey Silver based upon his position as Vice President of Applied Underwriters and the answers he personally supplied for the interrogatories.

ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015. The scope of permissible discovery under Rule 26 is broad and parties may obtain

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts should examine each case individually to determine the weight and importance of the proportionality factors.

The burden of demonstrating the proportionality of the requested information is a collective responsibility between the parties and the court. Elizabeth D. Laporte & Jonathan M. Redgrave, *A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26*, 9 FED. CT. REV. 20, 40 (2015). A party requesting discovery must show how the requested information is important to the issues and resolution of the case: The responding parting must show the expense and burden of

responding. Id. The court can then balance the parties' interests and order discovery consistent with the proportionality mandated under the federal rules.

Most of the discovery sought by Defendant through the instant motion concerns the Reinsurance Agreement, the relationship between the Note and the Reinsurance Agreement, and the relationship between AUCRA and Applied Underwriters. Top's Personnel claims this information is relevant because the parties still have a dispute regarding the applicability of the arbitration clause contained in the Reinsurance Agreement. It is Top's Personnel's position that the two agreements—the Reinsurance Agreement and the Note—are related and that either 1) Applied Underwriters intended to be bound by the Reinsurance Agreement, or 2) the parent company of Applied Underwriters and AUCRA directed that a different entity sign the Note in order to avoid obligations of the Reinsurance Agreement. Accordingly, Top's Personnel argues that the disputed discovery affects this court's jurisdiction over the claim.

Applied Underwriters argues that this lawsuit solely concerns the Note and that Top's Personnel's efforts to interpose the Reinsurance Agreement into this litigation was closed by the court's order denying the Motion to Dismiss.[3]

As outlined in the court's ruling on the motion to dismiss, as a non-signatory, Applied Underwriters may be bound to the Reinsurance Agreement and its provisions, including the arbitration provision, if it can be shown that Applied Underwriters and

---

[3] A review of Applied Underwriters' responses to the disputed discovery leaves this court unimpressed with its responsiveness. For example, in Interrogatory No. 3 Top's Personnel's requested to know the time period of negotiations for the Note. In its response, Applied Underwriters answered "prior to the execution of the [Note]." Plaintiff's vague and unnecessarily imprecise answer troubles the court. In another example, Plaintiff first responded to Defendant's Request for Production stating that it had no documents responsive to Defendant's request and producing a very small number of documents. But after receiving Defendant's meet-and-confer letter, Plaintiff produced 1,500 pages of documents. The court additionally notes that Plaintiff did not serve its responses on Defendant until around two and a half months after receiving Defendant's requests and two weeks after the close of written discovery.

5

AUCRA were sufficiently close or formalities were disregarded such that the corporate veil was pierced or the entities acted as each other's alter ego. (See Filing No. 34). Accordingly, the court agrees that the relationship between AUCRA and Applied Underwriters, as well as the details surrounding the creation of the Note and its connection to the Reinsurance Agreement are relevant in this case.

The court will review each of the disputed items in turn.

Defendant's Interrogatories to Plaintiff.

**INTERROGATORY NO. 2.** Describe in detail the negotiations that led to the execution of the Reinsurance Agreement. In doing so:
    a.    Identify the individuals and entities that participated in the negotiation of the Reinsurance Agreement;
    b.    Describe in detail the substance of those negotiations;
    c.    Set forth the time period of negotiation; and
    d.    Attach all documents that relate, refer, or otherwise pertain to the negotiations.

**ANSWER:** Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, the RPA is offered to the client in its final form as part of the EquityComp® program.[4]

Defendant claims that Plaintiff's answer to this question was evasive and nonresponsive. According to the defendant, Plaintiff should be required to identify individuals involved in the negotiation, state the substance of negotiations, and provide

---

[4] Plaintiff has asserted several general or boilerplate objections in response to most of Defendant's interrogatories. Objections to interrogatories and requests for production of documents must be stated with specificity. Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(C). General blanket objections do not meet these specificity requirements and will be disregarded by this court. See Packard v. Darveau, case no. 4:11cv3199, 2012 WL 4443505 at *3 (D. Neb. Sept. 25, 2012). Accordingly, Plaintiff's general objections to Defendant's interrogatories and requests for production are overruled.

6

documents that refer, relate, or otherwise pertain to the negotiations of the Reinsurance Agreement.

While certain information concerning the Reinsurance Agreement is relevant in this case, Applied Underwriters was not a party to the Reinsurance Agreement. It is therefore possible that the plaintiff does not possess the information sought by Defendant. To the extent that Applied Underwriters participated or assisted in the negotiation of the Reinsurance Agreement, Applied Underwriters must supply the information to the defendant. If Applied Underwriters does not have any specific factual information regarding this request or pertinent documents in its possession, Applied Underwriters should unequivocally state that.

**INTERROGATORY NO. 3.** Describe in detail the negotiations that led to the execution of the Promissory Note. In doing so:
- a. Identify the individuals and entities that participated in the negotiation of the Reinsurance Agreement;
- b. Describe in detail the substance of those negotiations;
- c. Set forth the time period of negotiation; and
- d. Attach all documents that relate, refer, or otherwise pertain to the negotiations.

**ANSWER:**
- a. Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, the individuals involved in the negotiation that led to the execution of the Promissory Note were members of Plaintiff's customer service department and including Emily Conners.
- b. The substance of the negotiation was that Defendant owed $119,645.13 and requested a payment plan to pay the amount owed.
- c. The negotiation occurred prior to the execution of the Promissory Note.
- d. See documents attached as Exhibit 1.

Top's Personnel seeks a complete answer to Interrogatory No. 3, arguing that Applied Underwriters has failed to provide a responsive answer. For example, Plaintiff stated multiple customer service department members participated in the negotiation of the Note, but Applied Underwriters provided the name of only one witness. Plaintiff has since supplemented its answer to provide additional names of employees involved and additional documents.[5]

Even after the supplement provided by Plaintiff, see filing no. 48-1 at CM/ECF p. 73, the court finds Plaintiff's answer insufficient. Accordingly, Applied Underwriters must answer this interrogatory and produce the requested documents with the specificity requested by the defendant with the understanding that the entire interrogatory pertains to the negotiation of the Note.[6]

> **INTERROGATORY NO. 4.** Describe in detail the relationship between the Reinsurance Agreement and the Promissory Note.
>
> **ANSWER:** Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, the Reinsurance Participation Agreement and the Promissory Note are unique and separate agreements.

Top's Personnel asserts that the essence of this Interrogatory is simple: "Did the indebtedness mentioned in the [Note] in any way relate to the Reinsurance Agreement."

---

[5] In Applied Underwriters' response to the meet-and-confer letter it supplemented Interrogatory No. 3 by including the name of one other employee involved in the negotiations.

[6] Applied Underwriters contends that Interrogatory No. 3 is confusing as it generally requests information regarding the negotiation of the Note, but sub-paragraph a. names the Reinsurance Agreement. The court believes this was an innocent and obvious mistake by the defendant.

Top's Personnel believes that the obligations on the Note were derived from the Reinsurance Agreement. Top's Personnel points to the original complaint as proof of its contention: as originally filed the lawsuit contained claims arising under both the Reinsurance Agreement and the Note. (Filing No. 1). Applied Underwriters has not addressed Top's Personnel's beliefs and claims the issue is irrelevant.

Interrogatory No. 4 is relevant. Specifically, this issue is relevant to whether the Plaintiff may be bound to the Reinsurance Agreement. Plaintiff shall fully and truthfully respond to Interrogatory No. 4, answering whether the indebtedness mentioned in the Note relates in any way to the Reinsurance Agreement. If the plaintiff does not know, it must clearly state that fact.

> **INTERROGATORY NO. 5.** Set forth the reason why Applied Risk was the party to the Reinsurance Agreement.
>
> **ANSWER:** Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, [AUCRA] is a party to the Reinsurance Participation Agreement along with Defendant and its related entities.

Top's Personnel admitted that it incorrectly labeled the party in this interrogatory (defendant named Applied Risk instead of AUCRA).[7] Top's Personnel argues that based upon the litigation to date, Applied Underwriters could have properly interpreted this interrogatory and understood that Top's Personnel meant to name AUCRA. Applied Underwriters argues that it has fully answered Interrogatory No. 5 "as written."

---

[7] The definition of "Applied Risk" as set forth in Defendant's Interrogatories includes "all of [Plaintiff's] parents, subsidiaries, predecessors, successors, affiliates, attorneys, agents, and employees thereof." (Filing No. 48-1 at CM/ECF p. 7).

To the extent that plaintiff has knowledge it must provide an answer to Interrogatory No. 5—understanding that Defendant meant AUCRA in place of Applied Risk. If the plaintiff does not know, it must clearly state that fact.

> **INTERROGATORY NO. 6.** Set forth the reason why Applied Underwriters was the party to the Promissory Note.
>
> **ANSWER:** Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, Plaintiff objects as invading the attorney-work product doctrine.

Plaintiff asserts its answer to Interrogatory No. 6 is protected on the basis of attorney-client privilege. ([Filing No 48-1 at CM/ECF p. 73](#)). That is, Plaintiff argues that Applied Underwriters was a party to the Note on the advice of counsel and thus its response is privileged. Defendant claims that it does not seek attorney-client communications, but merely seeks to know the reason(s) why Applied Underwriters was a party to the Note. The court finds Interrogatory No. 6 is relevant for the reasons described above.

The court believes it is very unlikely that Applied Underwriters' decision to negotiate and execute the Note was based solely on the legal advice of counsel. Accordingly, Applied Underwriters must answer Interrogatory No. 6 providing any reason it was a party to the Note that does not entail confidential attorney-client communications. In providing its response, Applied Underwriters should be mindful that while attorneys often provide business or other advice to their clients, the attorney-client privilege extends only to confidential communications made for the purposes of rendering <u>legal</u> advice and services to the client. <u>See</u> <u>United States v. Horvath</u>, 731 F.2d 557, 561–62 (8th Cir. 1984)(Holding attorney-client privilege is inapplicable to business advice provided by counsel).

>    **INTERROGATORY NO. 7.** Set forth the reason why the parties to the Reinsurance Agreement and Promissory Note were different (i.e. why did Applied Underwriters execute the Promissory Note when Applied Risk executed the Reinsurance Agreement).
>
>    **ANSWER:** Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, Plaintiff reiterates that it objects to the indiscriminate use of written discovery to propound questions to Plaintiff which are irrelevant to the issues in this litigation, and which impose an undue burden and waste the time and resources of Plaintiff. Without waiving those objections, Applied Risk is not a party to the Reinsurance Participation Agreement.

Top's Personnel again erroneously stated 'Applied Risk' instead of 'AUCRA.' And plaintiff argues that under Rule 26, it was not required to correct Defendant's mistaken interrogatory or to divine what was intended. But to avoid answering this Interrogatory, the court believes that Plaintiff would have to completely disregard the first portion of the interrogatory which explicitly asks why the parties to the agreements were different. Plaintiff further argues based upon the court's prior decision the Reinsurance Agreement and arbitration clause are not at issue in this case.

Based on the record before the court, Applied Underwriters is an indirect parent of AUCRA. Top's Personnel argues that different parties signed the agreements to avoid obligations imposed by the Reinsurance Agreement. Consequently, the court finds Interrogatory No. 7 is directly relevant to the issue of whether AUCRA and Applied Underwriters were acting as each other's alter ego at the time the Reinsurance Agreement and Note were executed. Understanding that Interrogatory No. 7 is asking why AUCRA was a party to the Reinsurance Agreement but then Applied Underwriters was a party on the Note, Plaintiff shall answer Interrogatory No. 7 to the extent it has knowledge.

**INTERROGATORY NO. 11.** Describe in detail how You calculated the amount allegedly owed as set forth in the Amended Complaint.

**ANSWER:** Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, the amount owed is calculated by examining the fully executed Promissory Note.

Defendant seeks to compel greater detail regarding how Plaintiff arrived at the amount of damages. For example, providing how interest is computed, when the interest began accruing, whether the interest is compound or simple, etc. In the January 6th letter supplementing its answers, Plaintiff stated the amount was calculated by multiplying the interest rate provided in the Note and the principal as of the date of the answer.

In its complaint, Plaintiff states interest is accruing on a per diem basis. (Filing No. 23 at CM/ECF p. 2). Plaintiff must explain the full calculation of damages, including when interest began to accrue.

**INTERROGATORY NO. 15.** Identify the section(s) of any other agreements upon which You rely in support of Your claim against Defendant.

**ANSWER:** Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, Plaintiff may rely on any relevant agreement executed by Defendant in support of its claim against Defendant.

Applied Underwriters objects to Interrogatory No. 15 on the basis of the work-product doctrine. Applied Underwriters argues the interrogatory seeks information regarding the theory upon which Plaintiff intends to rely. (Filing No. 48-1 at CM/ECF p.

75). Defendant contends that if Plaintiff intends to rely upon additional agreements or documents to support its claim, it must produce them.

Under Federal Rule of Civil Procedure 26 a party must disclose a copy or description of all documents that the party may use to support its claims or defenses and the party must supplement its disclosures where incomplete. Fed. R. Civ. P. 26. If Plaintiff is relying on other agreements to support its claim, it must produce or disclose the agreements according to the Federal Rules. Plaintiff is not required to produce documents containing the mental impressions or strategy of its counsel, but it must disclose any documents or agreements that support its claim against the defendant.

To the extent that Plaintiff still believes its response and the corresponding documents are protected under the work-product doctrine, Rule 26(b)(5) requires the party withholding information to provide a privilege log that "describes the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Document Production.

In its First Set of Requests for Production, Top's Personnel sought any document identified in response to Defendant's First set of Interrogatories, and numerous other documents including those which Plaintiff intends to rely on at trial. (Filing No. 48-1 at CM/ECF pp. 22–26). Applied Underwriters responded that it had "no documents responsive" to a majority of Defendant's requests. (Id. at CM/ECF pp. 52–55).[8] But after receiving the meet-and-confer letter, Applied Underwriters delivered 1,500 pages of

---

[8] Altogether the sum-total of the production included the Note, an organizational chart, and a December 17, 2104 letter addressed to Top's Personnel. (See Filing No. 48-1).

13

supplemental production. Top's Personnel argues that while its review of these documents is ongoing, this production is deficient. Specifically, Top's Personnel claims the production contains no correspondence regarding the Note or Reinsurance Agreement and contends that Applied Underwriters certainly sent and received emails regarding the Promissory Note and Reinsurance Agreement. Top's Personnel requests that this court compel Plaintiff to make a search, detail its efforts, and produce responsive documents if any are found.

Plaintiff shall produce for the defendant any correspondence (email, letter, etc.) regarding the Note and Reinsurance Agreement in its possession, custody, or control. If no such correspondence is uncovered after a thorough and diligent search, Plaintiff shall provide Defendant a statement signed under oath to that effect.

### The Deposition of Jeffrey Silver.

Top's Personnel seeks to depose Plaintiff's Counsel Jeffrey Silver, but Applied Underwriters refuses to produce Silver for a deposition. According to the defendant, as Vice President of Applied Underwriters, Silver has knowledge regarding the underlying facts in this matter. Top's Personnel also argues Silver supplied information used in answering the interrogatories. Applied Underwriters rejects this contention and states that Silver supplied information only in his capacity as counsel and that he possessed no relevant knowledge independent of that capacity. But Applied Underwriters is willing to supply Rose Barrett for a deposition—Barrett was also listed as supplying information for the interrogatories.

In order to depose Silver, Top's Personnel must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation

of the case." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 729 (8th Cir. 2002)(citations omitted). This difficult burden protects against the "harassing practice of deposing opposing counsel" which often "does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." Shelton v. American Motors Corp., 805 F.2d 1323, 1330 (8th Cir. 1986).

Top's Personnel argues Silver is in possession of material and relevant information and that Top's Personnel is unable to ascertain the extent of Silver's knowledge without his deposition. Specifically, Plaintiff indicated that interrogatory answers were supplied by Rose Barrett and Silver and Top's Personnel argues Plaintiff has made no effort to differentiate between the information supplied by each.

From the record, it does not appear that the defendant has deposed Barrett. Top's Personnel has not shown why Barrett's testimony would be insufficient or would fail to provide the information being sought. And by deposing Barrett, defendant can determine what, if any, information was supplied by Silver.

Accordingly, the court finds that Top's Personnel has not carried the burden of showing that deposing Applied Underwriters' counsel is warranted in this case.

IT IS ORDERED:

1) Defendant's Motion to Compel is granted in part and denied in part, (Filing No. 46), as set forth below.

> a) Defendant Top's Personnel's motion to compel is granted as to Interrogatories 2, 3, 4, 5, 6, 7, 11 & 15 served on Plaintiff Applied Underwriters as set forth in the body of this order.

b) Defendant Top's Personnel's motion to compel is granted as to the Request for Production served on Plaintiff Applied Underwriters.

c) Defendant's request to depose Plaintiff's Counsel, Jeffrey Silver, is denied.

Dated this 31st day of March, 2017.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge