IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| APPLIED UNDERWRITERS, INC., a Nebraska Corporation;<br><br>                    Plaintiff,<br><br>    vs.<br><br>TOP'S PERSONNEL, INC., A New Jersey Corporation;<br><br>                    Defendant. | **8:15CV90**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the Motion to Compel and Motion for Sanctions filed by Defendant Top's Personnel Inc. ("Top's Personnel"). (Filing No. 89). For the following reasons, the motion will be granted as set forth below.

BACKGROUND

In December of 2011, Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA") entered into a Reinsurance Participation Agreement ("Reinsurance Agreement") with Top's Personnel. (Filing No. 17 at CM/ECF p. 3). Plaintiff Applied Underwriters Inc. ("Applied Underwriters") was not a party to the Reinsurance Agreement. On May 15, 2014, Top's Personnel executed a promissory note ("the Note") in favor of Applied Underwriters. In the Note, Top's Personnel "acknowledge[d] its indebtedness (including workers' compensation premiums) to [Applied Underwriters] and its affiliates and subsidiaries" and promised to pay the principal sum of $119,645.13 together with interest. (Filing No. 1-1 at CM/ECF p. 7). AUCRA was not a party on the Note.

In February of 2015, Applied Underwriters and Applied Risk Services ("ARS") filed a Complaint against Top's Personnel. ([Filing No. 1-1](#)). The initial Complaint alleged two claims. The first alleged Top's Personnel breached its obligations to Applied Underwriters under the Note. The second alleged Top's Personnel breached its obligations to ARS under the Reinsurance Agreement.

The court determined ARS was not a party to the Reinsurance Agreement. ([Filing No. 22](#)). Thereafter, Plaintiff Applied Underwriters filed an amended complaint removing ARS and the second cause of action from the original complaint. The amended complaint alleges that Top's Personnel and Applied Underwriters entered into the Note "for good and valuable consideration" and Top's Personnel failed to make the required payments under the Note. ([Filing No. 23](#)). Applied Underwriters alleges that with accrued interest added, Top's Personnel owes $126,488.45 under the Note. ([Id.](#)).

In April of 2016, Top's Personnel moved to dismiss or otherwise stay Plaintiff's claim and compel arbitration, citing an arbitration clause within the Reinsurance Agreement. ([Filing No. 27](#)). The court determined Applied Underwriters was not a party to the Reinsurance Agreement nor did it appear to be legally bound by the Reinsurance Agreement or the specific arbitration provision within it. ([Filing No. 34](#)). The court explained that if the corporate relationship between Applied Underwriters and AUCRA was sufficiently close or the formalities between the two corporations were disregarded, there may be a valid argument that Applied Underwriters could be bound by the Repurchase Agreement and its arbitration clause. (See [Filing No. 34 at CM/ECF p. 6](#)). But based on the evidence before the court at that time, the court denied Top's Personnel's motion.

On August 8, 2016, this Court entered its order for the final progression of this case in accordance with the parties' Rule 26(f) report. (Filing Nos. 38 & 39). The Court ordered that the deadline for completing written discovery was November 30, 2016. (Filing No. 39 at CM/ECF p. 2). Top's Personnel served its First Set of Interrogatories and Document Requests upon Plaintiff on September 22, 2016. Among other requests, the defendant's Interrogatories and Document Requests sought specific information and documents concerning the Reinsurance Agreement, the relationship between the Note and the Reinsurance Agreement, and the corporate relationship between AUCRA and Applied Underwriters. Defendant received Plaintiff's responses on December 12, 2016.

Top's Personnel believed Applied Underwriters' responses to its discovery were incomplete, and in accordance with Fed. R. Civ. P. 37(a)(2)(A) and NECivR 7.0.1(i), the parties conferred in an effort to resolve their disputes. On December 29, 2016, the defendant sent a meet-and-confer letter to Plaintiff's counsel. (Filing No. 48-1 at CM/ECF p. 66). Plaintiff responded by letter on January 6, 2017, supplementing some of the discovery in dispute, (Id. at p. 72), but ultimately the parties were unable to fully resolve their dispute. Defendant filed a motion to compel on January 17, 2017. (Filing No. 46).

In the motion, Top's Personnel sought to compel Applied Underwriters to fully answer Interrogatory Nos. 2, 3, 4, 5, 6, 7, 11, & 15 and sought supplements to its document production. Regarding document production, Top's Personnel claimed Applied Underwriters failed to produce any correspondence regarding the Promissory Note, Reinsurance Agreement, and any negotiations between the parties. (Filing No. 47 at CM/ECF pp. 11–12). Finally, the defendant sought to take the deposition of Plaintiff's Counsel, Jeffrey Silver based upon his position

as Vice President of Applied Underwriters and the answers he personally supplied for the interrogatories.

The court entered its order on Defendant's Motion to Compel on March 31, 2017 (the "March 31 Order"). (Filing No. 77). The court granted the motion in part and denied the motion in part. Specifically, the court granted Defendant's motion as to each interrogatory and on Defendant's request for production. However the court denied the defendant's request to depose Plaintiff's counsel. (Filing No. 77 at CM/ECF pp. 15–16). The discovery compelled under the March 31, 2017 order was not produced until after a telephone conference and order entered on April 25, 2017 which required Plaintiff to produce its discovery in accordance with the March 31 Order by April 28, 2017. (See Filing No. 84). On April 28, 2017 Plaintiff produced its supplemental responses pursuant to the March 31 Order. (See Filing No. 91-1).

Once again, Top's Personnel believed many of Applied Underwriters' responses to the discovery were insufficient and incomplete. Top's Personnel raised the issue on a telephonic conference with the undersigned on May 12, 2017 and on May 19, 2017 sent a meet-and-confer letter to Plaintiff's counsel. (Filing No. 91-1 at CM/ECF pp. 70–73). In addition to discussing Applied Underwriters' discovery responses, Top's Personnel again discussed the potential of deposing Plaintiff's counsel based upon certain new answers provided in Plaintiff's discovery responses. Plaintiff responded to Defendant's meet-and-confer letter on May 30, 2017 and Plaintiff provided approximately 240 pages of additional discovery. (Id. at CM/ECF pp. 74–78). Top's Personal argues that Applied Underwriters' answers remain incomplete and requested, and was granted, leave to file the instant motion.

In the motion, Top's Personnel again seeks to compel Applied Underwriters to completely answer, with clarity, Interrogatories 3, 5, 6, and 7 and to fully supplement its document production concerning these interrogatories. Top's Personnel also seeks to compel the deposition of Mr. Silver arguing that new information provided by Plaintiff shows he is an essential fact witness in this case. Additionally, Top's Personnel seeks sanctions against Applied Underwriters in accordance with Rule 37(b) for Applied Underwriters' alleged failure to comply with the court's March 31 Order.

ANALYSIS

The scope of permissible discovery is broad and parties may obtain:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Courts should examine each case individually to determine the weight and importance of the proportionality factors.

A majority, if not all, of the discovery which Top's Personnel seeks was the subject of its prior motion to compel and the court's March 31, 2017 order. (See Filing No. 46; Filing No. 77). Top's Personnel argues that Applied Underwriters continues to evade the Defendant's discovery requests and did not comply with the March 31 Order. Applied Underwriters argues that it has fully answered the interrogatories and complied with the court's order. Plaintiff further argues this

case is a straightforward breach of contract case concerning only the Promissory Note. That is, Plaintiff contends that Defendant's discovery requests complicate this matter and are in essence a "fishing expedition."

For the reasons, discussed in the March 31, 2017 order, each of the interrogatories and requests (which are part of this and the previous motion) are permissible discovery under Federal Rule 26(b)(1) and are relevant. The requests pertain to the creation of the Note and its connection to the Reinsurance Agreements as well as the relationship between AUCRA and Applied Underwriters. That is, the information affects whether Applied Underwriters may be bound to the Reinsurance Agreement, which may determine whether this case is subject to mandatory arbitration. (See Filing No. 77 at CM/ECF pp. 5–6, 11; Filing No. 34 at CM/ECF pp. 5–7).[1]

Applied Underwriters argues that Top's Personnel and AUCRA are already involved in the arbitration of AUCRA's claims arising from the Repurchase Agreement and thus implies that Top's Personnel's discovery in this case is untimely and should be abandoned. The arbitration of AUCRA's claims under the Repurchase Agreement does not affect whether the parties to the Note are bound to the Repurchase Agreement's arbitration clause; whether this court must compel arbitration of Applied Underwriters' claims. See Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 592 n.6 (8th Cir. 1984)(holding the court must compel arbitration where certain elements are met); see also Herd Co. v. Ernest-Spencer Inc., Case No. 8:09cv397, 2010 WL 76371 **8–10 (D. Neb. January 5,

---

[1] Applied Underwriters' argument that defendant is on a "fishing expedition" is unfounded. The court's March 31 Order was clear regarding the relevance of this discovery. Even if Plaintiff believes the discovery to be extraneous and irrelevant to the case, the court has found and ordered otherwise.(See Filing No. 77). Plaintiff did not appeal that ruling.

2010)(recognizing the split in authority regarding whether an action should be stayed or dismissed when claims are subject to arbitration).

The court will review each disputed discovery item in turn.

<u>Defendant's Interrogatories to Plaintiff.</u>

**INTERROGATORY NO. 3.** Describe in detail the negotiations that led to the execution of the Promissory Note. In doing so:
    a.    Identify the individuals and entities that participated in the negotiation of the Reinsurance Agreement;
    b.    Describe in detail the substance of those negotiations;
    c.    Set forth the time period of negotiation; and
    d.    Attach all documents that relate, refer, or otherwise pertain to the negotiations.

**Plaintiff's previous answer:**
    a.    Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, the individuals involved in the negotiation that led to the execution of the Promissory Note were members of Plaintiff's customer service department and including Emily Conners.
    b.    The substance of the negotiation was that Defendant owed $119,645.13 and requested a payment plan to pay the amount owed.
    c.    The negotiation occurred prior to the execution of the Promissory Note.
    d.    See documents attached as Exhibit 1.

In response to Defendant's first motion to compel, the court granted defendant's request to compel a complete answer to Interrogatory No. 3 and required Applied Underwriters to answer Interrogatory No. 3 with "the specificity

requested by the defendant[.]" ([Filing No. 77 at CM/ECF p. 8](#)). The court found that Plaintiff's previous responses had failed to provide a fully-responsive answer, noting Plaintiff named only one employee involved in the negotiations. ([Id.](#)) On April 28, 2017 Plaintiff supplemented its answer as follows:

**Plaintiff's Supplemented Response After March 31 Order:**

a.  The individuals involved in the negotiation that led to the execution of the Promissory Note [assuming the interrogatory was directed to the Promissory Note in questions and not the Reinsurance Participation Agreement] was Defendant's broker, Ted Juszczak who request a promissory note from Plaintiff.

b.  The substance of the negotiation was that Defendant owed $119,645.13 and through its broker requested a payment plan to pay the amount owed.

c.  The discussions occurred just prior to the execution of the Promissory Note which was sent to Top's broker for execution.

Top's Personnel argues that Applied Underwriters' supplemental answer continues to be evasive.

Plaintiff argues that its answer was not evasive but instead that Defendant was able to derive the answer from an examination documents produced in accordance with [Federal Rule of Civil Procedure 33(d)](#).

Rule 33(d) allows a party to indirectly answer an interrogatory through the use of documents. Rule 33(d) states:

If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and <u>if the burden of deriving or ascertaining the answer will be substantially the same for either party</u>, the responding party may answer by:  . . .

> specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could and . . . giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d) (emphasis added).

While Plaintiff did produce the documents in which the answers to parts of Interrogatory No. 3 could be found, to provide a proper response through use of Rule 33(d), Applied Underwriters was required to identify and direct Top's Personnel to the documents in which the answers would be found. See Fed. R. Civ. P. 33(d)(1). Applied Underwriters failed to do so. Instead, it appears Plaintiff provided a partial response to the interrogatory and expected the defendant to sift through the documents produced and extract the remainder of the answer.

Plaintiff's brief indicates Mr. Silver was the only individual involved in the "so-called negotiation" of the Note on Plaintiff's behalf. (See Filing No. 92 at CM/ECF p. 10). However, in Plaintiff's supplemental answer, Mr. Silver is not listed as an individual involved in the negotiations. Defendant's counsel addressed Plaintiff's failure to name any of Plaintiff's representatives or employees involved in the negotiation of the note in its May 19 meet-and-confer letter. The responsive letter by Plaintiff's counsel did not identify any individuals, stating "[t]he e-mails make it clear who participated in the negotiations[.]" (Filing No. 91-1 at CM/ECF p. 76).

Plaintiff's answer to Interrogatory No. 3 fails to fully identify the persons who negotiated the Note on behalf of the Plaintiff,[2] and the Plaintiff has still failed

---

[2] It is the defendant's contention that the Plaintiff is purposefully evasive in answering this interrogatory because the only individual involved in the negotiation of the Note was Plaintiff's counsel, Jeffrey Silver, and that by listing Mr. Silver as an

to provide a complete and specific response to parts b and c of Interrogatory No. 3.

Applied Underwriters shall answer Interrogatory No. 3 completely and with clarity. To avoid any confusion, the court specifically orders that Plaintiff shall supply the names of every person and entity that participated in negotiating the Note on behalf of the Plaintiff; Plaintiff shall describe the substance of the negotiations of the note with particularity, including but not limited to whether the negotiations referred to or incorporated provisions within previous promissory notes exchanged between these parties; whether Applied Underwriters presented and used a "form" promissory note used in cases such as this, etc.;[3] and Plaintiff shall list the specific dates or date range during which the negotiations for the Note occurred. If certain documents produced are responsive to Interrogatory No. 3, Plaintiff shall specifically identify which documents provide further information regarding the negotiations and terms of the promissory note.

Interrogatory Nos. 5, 6, & 7.

**INTERROGATORY NO. 5.** Set forth the reason why Applied Risk was the party to the Reinsurance Agreement.

**Plaintiff's Previous Answer:**

---

involved negotiator, he is potentially subject to being deposed and being disqualified as counsel in this case.

[3] Plaintiff argues in its brief in opposition that there were no negotiations of the Note but instead the 'negotiations' involved an email from Mr. Juszczak requesting a note and Mr. Silver's response in supplying the Note. The court has examined the email from Mr. Juszczak and noted the wording "forward me the <u>additional</u> promissory note you are deferring . . . ." (<u>Filing no. 93-15 at CM/ECF p. 12</u>). The wording leads the court to believe that there were likely prior negotiations to determine the terms for Notes between these two companies. If this is true, Plaintiff should state this fact.

Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, [AUCRA] is a party to the Reinsurance Participation Agreement along with Defendant and its related entities.

**Plaintiff's Supplemented Response After March 31 Order:**
Applied Underwriters Captive Risk Assurance Company, Inc. is a party to the Reinsurance Participation Agreement along with Defendant and its related entities.

**INTERROGATORY NO. 6.** Set forth the reason why Applied Underwriters was the party to the Promissory Note.

**Plaintiff's Previous Answer:**
Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, Plaintiff objects as invading the attorney-work product doctrine.

**Plaintiff's Supplemented Response After March 31 Order:**
Without waiving any attorney client privilege, Applied Underwriters, Inc. was the party to the Promissory Note to avoid having to have multiple promissory notes from Top's to different entities to which it owed money.

**INTERROGATORY NO. 7.** Set forth the reason why the parties to the Reinsurance Agreement and Promissory Note were different (i.e. why did Applied Underwriters execute the Promissory Note when Applied Risk executed the Reinsurance Agreement).

**Plaintiff's Previous Answer:**
Plaintiff incorporates herein its General Objections identified above. Without waiving that objection, Plaintiff reiterates that it objects to the indiscriminate use of written discovery to propound questions to Plaintiff which are irrelevant to the issues in this litigation, and which impose an undue burden and waste the time

and resources of Plaintiff. Without waiving those objections, Applied Risk is not a party to the Reinsurance Participation Agreement.

**Plaintiff's Supplemented Response After March 31 Order:**
Applied Risk is not a party to the Reinsurance Participation Agreement, but see answer to Interrogatory No. 6.

Top's Personnel states that Applied Underwriters' supplemental answer to these interrogatories created additional questions and confusion. Accordingly, Top's Personnel requested clarification within its May 19, 2017 meet-and-confer letter. Specifically, Top's Personnel sought information regarding the supplemental answer's implication that Top's Personnel had potentially another promissory note and whether there were "different entities" to which Top's Personnel owed money. The parties were unable to reach an agreement. (See Filing No. 91-1 at CM/ECF pp. 72 & 76).

Top's Personnel now seeks an order compelling Applied Underwriters to clarify its response by answering whether there were any additional promissory agreements and, if so, what entities they were between. Top's Personnel also seeks clarification regarding Plaintiff's suggestion that Top's Personnel owes money to other entities. Top's Personnel argues the purpose of interrogatories 5, 6, and 7 was to determine why the parties to the Note were different from those to the Repurchase Agreement. Top's Personnel argues that Applied Underwriters' answer to Interrogatory No. 6 opens the door with regard to the 'other Promissory Notes' mentioned and states that this information is relevant to the question of why different parties executed the certain agreements.

The court has previously found that the question of why different parties signed the respective agreements is relevant in this case. (See Filing No. 77 at CM/ECF p. 11.). While the court does not wish to stray too far down the rabbit

hole, Plaintiff's answer to Interrogatory No. 6 indicates at the very least, there was one promissory note executed before the Note at issue in this case and the reason why the Note at issue in this case was executed by Applied Underwriters was to avoid having these multiple notes assigned to different parties. The court finds that this answer puts the preceding promissory notes directly at issue. Specifically, the court believes the following questions need to be answered: (1) whether the previous promissory note or notes executed between Applied Underwriters and Top's Personnel's also arose from defendant's obligations under the Repurchase Agreement; and if so, (2) why AUCRA was a party to the Reinsurance Agreement but then Applied Underwriters was a party on the promissory notes. Accordingly, the court compels Plaintiff to provide full and complete answers to Interrogatory Nos. 5, 6, & 7 and clarifications to Defendant's questions as presented in Aaron Peskin's May 19, 2017 meet-and-confer letter. (See Filing No. 91-1 at CM/ECF p. 72).

Document Production to Date.

The court's March 31 Order compelled Plaintiff to produce "any correspondence (email, letter, etc.) regarding the Note and Reinsurance Agreement in its possession, custody, or control." (Filing No. 77 at CM/ECF p. 14). Top's Personnel alleges that Applied Underwriters failed to comply with this portion of the March 31 Order and seeks an order compelling Applied Underwriters to comply with that order.

The supplemental documents Applied Underwriters produced included two emails documenting the negotiations between Mr. Juszczak and Mr. Silver. Top's Personnel argues that other than these two emails, Plaintiff produced no additional correspondence regarding either the Reinsurance Agreement or the

Promissory Note. Top's Personnel makes two main arguments to support its contention: First, Top's Personnel argues the content of the two emails produced make clear they are part of a larger chain of emails between Mr. Juszczak and Mr. Silver; Second, Top's Personnel argues that although Applied Underwriters identified four potential custodians, it produced no correspondence either to or from those individuals.

Applied Underwriters counters that it has previously produced around 1,450 pages of documents and further produced an additional 243 documents in response to Defense Counsel's May 19, 2017 meet-and-confer letter. Additionally, Plaintiff claims the two emails it produced were already in the custody, possession, and control of defendant, and defendant had even previously produced the same emails earlier in this litigation.

Top's Personnel does not dispute the volume of discovery that has been produced. But the issue is whether Plaintiff has fully produced documents regarding the communications between the parties about the Note, Repurchase Agreement and any other issues for which Top's Personnel has sought discovery. While Applied Underwriters produced a large volume of documents after the entry of the March 31 Order, few of those documents concerned communications between the parties.

Accordingly, similar to the March 31, 2017 order, the court orders Plaintiff to produce any correspondence/communication (email, letter, etc.) regarding the Note, Reinsurance Agreement, or other subjects addressed in Discovery. If no such documents exist, Plaintiff shall provide Defendant with a statement signed under oath to that effect. The sworn statement shall outline in detail Plaintiff's efforts to locate these communications.

<u>Plaintiff's Initial Disclosures.</u>

Applied Underwriters' Initial Disclosures listed Eric Butler and T.J. Koch as individuals likely to possess discoverable information. And in its responses to interrogatories, Applied Underwriters identified Rose Barrett and Robert Fischer as additional employees.[4] Accordingly, Top's Personnel argues that Ms. Barrett and Mr. Fisher are both likely to possess discoverable information, but that even after parties' meet-and-confer, Plaintiff refuses to supplement its Initial Disclosures to include these individuals. Defendant argues that Plaintiff is required to supplement the initial disclosures under Rule 26(e) and requests that the Court compel Plaintiff to supplement its Initial Disclosures so that Defendant can know the scope of information possessed by Mr. Fisher and Ms. Barrett.

Applied Underwriters argues that its initial disclosures "were accurate at the time based on the Note." Plaintiff further acknowledges that parties are required to supplement disclosures under Rule 26, but claims that Top's Personnel's grievance is "late" and immaterial because Top's Personnel already has knowledge of Ms. Barrett and Mr. Fisher.[5]

Under the initial disclosure provisions of Rule 26 of the Federal Rules of Civil Procedure,

---

[4] Ms. Barrett was identified as having assisted Plaintiff's counsel in providing responses to the Interrogatories. Mr. Fisher was identified as an individual that has knowledge regarding the Reinsurance Agreement.

[5] Plaintiff's arguments on this issue also include an allegation that Top's Personnel has failed to supplement its own initial disclosures. This argument is not relevant to the issue addressed in the instant motion. If Plaintiff believes Defendant has failed to supplement Defendant's disclosures as required under the Federal Rules, Plaintiff must confer with Defendant and if necessary, the court, to determine if a motion to compel is necessary.

a party must . . . provide to the other parties: the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Fed. R. Civ. P. 26(a). In addition Rule 26 requires that

[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court.

Fed. R. Civ. P. 26(e).

While the Plaintiff argues Defendant has knowledge of Ms. Barrett and Mr. Fisher, Plaintiff is not excused from fully complying with Rule 26 by providing Ms. Barrett and Mr. Fisher's address, telephone number and the subjects of the information known to each of them. Plaintiff must supplement its initial disclosures as required under the Federal Rules, including the relevant information pertaining to all individuals with discoverable information and the subjects/scope of that information.

And while the court will not issue sanctions on Plaintiff's failure to supplement its Initial Disclosures, the court notes that this is the second time it has ordered Plaintiff to comply with the explicit directives of the Federal Rules of Civil Procedure. (see Filing No. 77 at CM/ECF p. 13). The Federal Rules are not guidelines: They are rules which all parties must follow in federal court lawsuits. Plaintiff is cautioned that sanctions, including dismissal of Plaintiff's case, may be ordered if Plaintiff repeatedly fails to comply with the court's rules and orders.

<u>Motion to Compel Deposition of Plaintiff's Counsel Jeffrey Silver</u>.

Top's Personnel sought to depose Plaintiff's Counsel Jeffrey Silver within its first motion to compel. Top's Personnel argued that because Plaintiff indicated that Mr. Silver had provided information to answer discovery, he likely was in possession of information regarding the underlying facts of this case. The court denied Top's Personnel's request in the March 31 Order, holding Top's Personnel had not shown that deposing Rose Barrett, who also provided information to answer discovery, would be insufficient to gain the information being sought. (Filing No. 77 at CM/ECF p. 15).

Although Top's Personnel has yet to depose Ms. Barrett, it again argues that it should be allowed to depose Mr. Silver based on information gained after the March 31 Order. Specifically, Top's Personnel argues that the documents provided in response to Interrogatory No. 3 and Mr. Silver's response to Defendant's May 30, 2017 meet-and-confer letter show that Mr. Silver was the only individual involved in the negotiation of the Note on Applied Underwriters' behalf.

In order to depose Silver, Top's Personnel must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 729 (8th Cir. 2002)(citations omitted). This difficult burden protects against the "harassing practice of deposing opposing counsel" which often "does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the

discovery process." [Shelton v. American Motors Corp., 805 F.2d 1323, 1330 (8th Cir. 1986).](#)

Top's Personnel contends that the above criteria are met in this case. First, it argues that the negotiation of the Note at issue is relevant, material and crucial to preparing Defendant's case. Second, Defendant argues that according to Plaintiff's answer to Interrogatory No. 3 and document production, Mr. Silver is the only person who was involved negotiating the Note for Plaintiff.[6]

Applied Underwriters argues that Top's Personnel has not shown that deposing Mr. Silver is the only way to obtain the information. Applied Underwriters argues Top's Personnel could still depose Ms. Barrett as stated in the March 31 Order, or Mr. Juszczak who was involved in the negotiations of the Note on the Top's Personnel's behalf.

The March 31 Order held that Top's Personnel should first depose Ms. Barrett before deposing Mr. Silver because it was unclear what knowledge each individual possessed. The court reasoned that Ms. Barrett may be able to provide the same information known to Plaintiff's counsel, Mr. Silver. But based upon the newly learned information, this reasoning is no longer applicable. Applied Underwriters' answers to Interrogatory No. 3, the May 30, 2017 meet-and-confer letter, and Plaintiff's brief in response to this motion clearly state that Mr. Silver is the only individual who was involved in negotiating the Note on behalf of the Applied Underwriters. Although Applied Underwriters argues that the same information can be obtained from Mr. Juszczak, Mr. Juszczak negotiated the note

_____

[6] Top's Personnel notes Plaintiff's supplemental answer to Interrogatory No. 3 omitted any mention of an individual or entity that negotiated the note on behalf of the Plaintiff. Top's Personnel argues Plaintiff is being purposefully evasive because Mr. Silver recognizes the implications of 'admitting he was the only person to negotiate the note on Applied Underwriters' behalf.

on behalf of Top's Personnel; he is not in possession of the same information known to Mr. Silver.

Despite its numerous opportunities to name other individuals or entities with knowledge of the Plaintiff's negotiations of the Note, Applied Underwriters' submissions identify only one person:  Mr. Silver.  Accordingly, the court finds that Mr. Silver is the only person or entity in possession of relevant and material information on the Note negotiations. The court will compel Mr. Silver to submit to Defendant's deposition on the subject of Plaintiff's negotiations of the Note including all specific what, when, where, why and how questions of the Note negotiations.

Motion for Sanctions

Citing Federal Rule of Civil Procedure 37, Top's Personnel requests sanctions to recover its reasonable expenses, including attorney's fees, from Applied Underwriters for Applied Underwriters' alleged failure to comply with the Court's March 31, 2017 order. Top's Personnel alleges Applied Underwriters failed to fully and truthfully answer to Interrogatories 3, 5, 6, & 7 and it failed to fully supplement its document production as ordered by the court.

Rule 37 permits sanctions to be imposed against parties and witnesses who unjustifiably resist discovery. Rule 37(b) sanctions are available where a party has failed to comply with a court order to provide or permit discovery, including orders issued under Rules 26(f), 35, or 37(a). See Fed. R. Civ. P. 37(b). Sanctions may be imposed even when the party did not "willfully" refuse to obey

the Court's discovery order. Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 207-208 (1958).[7]

The court finds sanctions are warranted under Rule 37(b). A majority of the instant motion was already addressed on Defendant's first motion to compel and the court's March 31 Order on that motion; specifically, the portions concerning Applied Underwriters' responses to Interrogatories 3, 5, 6, 7 and Plaintiff's Document Production. Applied Underwriters' failure to fully comply with the March 31 Order necessitated the vast majority of the instant motion, resulting in delay. Plaintiff has not shown that its failure to fully comply with the court's order was substantially justified.

For example: regarding Interrogatory No. 3, in the March 31 Order, the undersigned compelled Applied Underwriters to answer Interrogatory No. 3 with "the specificity requested by the defendant[.]" (Filing No. 77 at CM/ECF p. 8). Plaintiff failed to comply with this order: Plaintiff's supplemental responses after the March 31 Order failed to name any individuals or entities who were involved in the negotiations of the Note from the Applied Underwriters' side,[8] and as to parts b and c of Interrogatory 3, Plaintiff failed to provide any additional detail or

---

[7] The court notes however, that a finding of willfulness is often required to impose the most severe Rule 37(b)(2) sanctions (dismissal, default judgment, and striking pleadings in whole or in part). See Insurance Corp. of Ireland, 456 U.S. at 705 (discussing Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S. Ct. 370, 53 L. Ed. 530 (1909)).

[8] Although Plaintiff's brief in response to the pending motion to compel states may answer Interrogatory 3, that brief was not filed until after Defendant had drafted and filed the instant motion to compel.

clarity despite the court's expressed concerns with Plaintiff's "vague and unnecessarily imprecise" responses, (Filing No. 77 n.3 at CM/ECF p. 5).[9]

The court has broad discretion to sanction the disobedient party under Rule 37(b)(2). Available sanctions under Fed. R. Civ. P. 37(b)(2) include "prohibiting the disobedient party from supporting or opposing designated claims or defenses[;]" "striking pleadings in whole or in part;" "staying the proceedings until the order is obeyed;" or "dismissing the action[.]" Fed. R. Civ. P. 37(b)(2)(A). Moreover, where the court finds that sanctions under Rule 37(b) are warranted, either instead of or in addition to the above sanctions, the court "must order the disobedient party, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(C).

Any sanction imposed must be fair, just, and tailored to the issue raised by the discovery order. See Insurance Corp. of Ireland, 456 U.S. at 707; Keefer v. Provident Life and Accident Ins. Co., 238 F.3d 937, 941 (8th Cir. 2000); Avionic Co. v. General Dynamic Corp., 957 F.2d 555, 558 (8th Cir. 1992). In assessing whether a given sanction is "just," relevant factors include the materiality of the issue on which discovery is withheld and the difficulty caused by that withholding. Avionic, 957 F.2d at 558.

The court finds that Top's Personnel should be awarded reasonable fees, including attorneys fees, for its work on this motion to compel. The court believes this sanction is just and sufficient to address Plaintiff's failures. In addition,

---

[9] Compare Plaintiff's previous answer "The negotiation occurred prior to the execution of the Promissory Note" to its supplement "The discussions occurred just prior to the execution of the Promissory Note which was sent to Top's broker for execution."

Defendant needs Plaintiff's responses to the unanswered discovery requests to fully explore whether this case is subject to mandatory arbitration. If it is, the court should not rule on the pending motion for summary judgment.

Accordingly,

IT IS ORDERED:

1) Defendant Top's Personnel's Motion to Compel is granted (Filing No. 89), as follows:

   a) Defendant's motion to compel is granted as to Interrogatories 3, 5, 6, & 7 and the Requests for Production served on Plaintiff Applied Underwriters as set forth in the body of this order. On or before August 18, 2017, Plaintiff shall fully respond to these discovery requests.

   b) Defendant's request to depose Plaintiff's Counsel, Jeffrey Silver, is granted. Mr. Silver shall cooperate in scheduling his deposition and in responding to deposition questions, such deposition to be completed on or before September 11, 2017.

2) Defendant Top's Personnel's Motion for Sanctions, (Filing No. 89), is granted. Defendant are entitled to reimbursement for attorney's fees and expenses incurred by Plaintiffs in preparing its second Motion to Compel, and

a) On or before August 18, 2017, Defendant's counsel shall serve counsel with an itemization of fees and costs incurred in filing the motion to compel.

b) Plaintiff's counsel shall respond to this itemization within ten days thereafter.

c) If the parties agree as to the amount to be awarded, on or before September 5, 2017, they shall file a joint stipulation for entry of an order awarding costs and fees to Defendant.

d) If the parties do not agree on the attorney fees and costs to be awarded, or if Plaintiff does not timely respond to the Defendant's itemization and demand, Defendant shall file an application for assessment of attorney fees and costs by no later than September 11, 2017. This application shall be submitted in accordance with the court's fee application guidelines outlined in Nebraska Civil Rules 54.3 and 54.4.

e) If a formal and disputed motion for assessment of recoverable fees is required, the prevailing party may be awarded up to $1,000 for its costs and fees in litigating this fee issue.

August 7, 2017.

BY THE COURT:

_s/ Cheryl R. Zwart_
United States Magistrate Judge