IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| APPLIED UNDERWRITERS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TOP'S PERSONNEL, INC., <br><br> Defendant. | 8:15-CV-90 <br><br> MEMORANDUM AND ORDER |

This dispute concerns a promissory note issued by the defendant, Top's Personnel, Inc., to the plaintiff, Applied Underwriters, Inc., in 2014. Filing 23-1. Applied is suing Top's on the promissory note, claiming that Top's "has made no payments" toward its obligation. Filing 142 at 1. Top's has responded with an affirmative defense, arguing that the note is "void" and the alleged obligation unenforceable. Filing 129 at 3.

This matter is before the Court on the parties' cross-motions for summary judgment. Filing 141; filing 145. For the reasons explained below, Applied's motion (filing 141) will be granted, and Top's motion (filing 145) will be denied. Top's will be ordered to pay Applied the sum of $166,202.65.

BACKGROUND

Applied Underwriters markets and sells a workers' compensation program called EquityComp. Filing 146 at 2; *see* filing 148-4 at 8. In 2011, Applied sold an EquityComp policy to Top's Personnel. Filing 146 at 2.

Top's monthly premiums under its policy generally ranged from $50,000.00 to $120,000.00 per month. Filing 146 at 7; filing 148-9. But in January 2014, Top's received an invoice for $511,358.70. Filing 146 at 7; filing 148-9 at 51-52. Unable to pay that amount, Top's issued a promissory note to

Applied in the amount of $119,645.13. *See* filing 23-1 at 1-6. Top's "acknowledge[d] its indebtedness" in the note, and "promise[d] to pay" Applied the amount reflected above. Filing 23-1 at 1.

When Top's failed to pay its alleged obligation, Applied filed suit, seeking $126,488.45 "plus accruing per diem interest." Filing 23 at 2. Top's answered Applied's complaint with a series of affirmative defenses, including the one at issue here: that EquityComp is unlawful and the promissory note void. Filing 129 at 3. Top's now moves for summary judgment on those grounds, arguing that it is entitled to relief as a matter of law. *See* filing 145. Applied, too, has moved for summary judgment, claiming that it is owed $166,202.65. Filing 141; *see* filing 143 at 12.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id*. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id*. But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id*. In order to show

that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

As noted, the parties dispute the validity of Top's 2014 promissory note. Top's argues that the note is unenforceable because it derives from an insurance program (EquityComp) that is "unlawful under New Jersey law." Filing 147 at 18. Applied disagrees, arguing that the note is enforceable regardless of its compliance (or noncompliance) with state regulations. Filing 158 at 3. The Court will provide a brief overview of EquityComp, and the relevant statutory requirements, before addressing the parties' dispute.

### 1. EQUITYCOMP

As a New Jersey employer, Top's is required to obtain workers' compensation insurance for its employees. *See* N.J. Stat. Ann. § 34:15-78. So, in 2011, Top's purchased an insurance policy through Applied's EquityComp program. Filing 146 at 2. The details of that program are complex and disputed, but it's generally described as a unified package consisting of three separate, yet related agreements. Filing 160 at 3.

The first agreement is between the participant-insured and a subsidiary of Applied—in this case, Continental Indemnity Company. Filing 147 at 2, 4;

- 3 -

filing 160 at 4; filing 148-3 at 21. Through that agreement, Applied's subsidiary agrees to provide the participant-insured a guaranteed-cost workers' compensation policy. *See* filing 148-3 at 9. Those policies are fixed-rate plans—meaning the insured's premiums remain consistent regardless of losses accrued during the policy term. Filing 148-4 at 9. As discussed below, the fixed-rate plan in this case was filed and approved by New Jersey's department of banking and insurance. *See* N.J. Stat. Ann. §§ 34:15-78; 34:15-88; *see* filing 146 at 3; filing 148-4 at 10.

The second agreement is a Reinsurance Participation Agreement, or "RPA." Very generally summarized, the RPA operates as EquityComp's investment component, allowing participants to share in the profits and losses associated with their coverage. Filing 160 at 4; filing 148-3 at 13-14. In that way, the RPA is part and parcel of the guaranteed-cost insurance policy: if the participant experiences fewer losses than expected under its policy, its premiums under the RPA go down.[1] Filing 148-4 at 8. If its losses are higher than expected, its premiums under the RPA go up. Filing 148-4 at 8. The RPA, unlike the guaranteed-cost policy, is neither filed with nor approved by state regulatory authorities. *See* filing 158 at 10.

The third agreement is a "Reinsurance Treaty" between Applied and its subsidiary-insurer. Filing 147 at 16; filing 160 at 4; *see* filing 148-4 at 10. The details of this agreement are unclear from the record, but Top's describes it as a means of "modify[ing] the rates of the [guaranteed-cost policy] pursuant to the RPA." Filing 147 at 16 n. 6.

---

[1] The parties dispute whether there are, in fact, two premiums (one under the guaranteed cost policy and one under the RPA) as this description implies. The Court need not conclusively resolve that dispute here.

## 2. REGULATORY FRAMEWORK & ALLEGED VIOLATIONS

Under New Jersey law, providers of workers' compensation insurance must "file with the commissioner of banking and insurance . . . a copy of the policy of insurance and copies of all indorsements attached." § 34:15-78. They must also file "classification of risks and premiums and rules pertaining thereto," together with the "basis rates and system of merit or schedule rating application to such insurance[.]" § 34:15-88. The commissioner must approve the "classifications of risks" and "basis rates" before the policy can take effect.

Applied (or its subsidiary) filed and obtained approval for EquityComp's guaranteed-cost workers' compensation policy in accordance with the laws set forth above. *See* filing 146 at 3; filing 148-4 at 10. It did not, however, file the RPA. *See* filing 158 at 9. On those grounds alone, Top's contends that EquityComp is unlawful and "void" because "only one component of th[e] program . . . is filed with and approved by the New Jersey Department of Banking [and] Insurance." Filing 147 at 18, 20-21. As a result, Top's argues that certain transactions arising from the program (including its promissory note) are void as "fruit of the poisonous tree." Filing 147 at 23-24.

Those arguments are premised on more general allegations of bad faith. In other words, Top's suggests that EquityComp was designed with the specific intent of "circumvent[ing] state regulatory requirements." Filing 147 at 1. It achieves that objective, Top's says, through an RPA that "converts" an *approved* guaranteed-cost workers' compensation insurance policy to an *unapproved* retrospective or "loss-sensitive" one.[2] Filing 147 at 14.

---

[2] Premiums under a "loss-sensitive" policy vary based on the participant's actual losses during a coverage period. *See Citizens of Humanity, LLC v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 909 N.W.2d 614, 620 (Neb. 2018).

Top's allegations may, or may not, be true. But the Court need not, and will not, conclusively resolve them here. Instead, the Court finds that the promissory note is enforceable, even assuming (without deciding) noncompliance with state regulations. Stated another way, Applied's assumed failure to file and obtain approval for its RPA does not, on these facts, void a separately-executed promissory note for unpaid workers' compensation premiums. Filing 23-1 at 3. Accordingly, Top's motion for summary judgment will be denied.

*Nebraska law applies*

As a preliminary matter, Top's promissory note contains a choice of law provision stating that the note "shall be governed by and construed in accordance with the laws of the state of Nebraska[.]" Filing 23-1 at 5 (emphasis omitted). Notwithstanding that provision, Top's argues that "New Jersey rather than Nebraska law should apply[.]" Filing 157 at 6. But Top's provides no support for its contention that the Court, in determining the validity of the note, must disregard the parties' express consent to Nebraska law. Nebraska law does govern this matter. *See Coral Production Corp. v. Central Resources, Inc.*, 730 N.W. 2d 357, 368 (Neb. 2007) ("[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied[.]") (citing Restatement (Second) of Conflict of Laws § 187(1)).

*The promissory note is enforceable*

As noted throughout, Top's issued its promissory note over two years after it had purchased the EquityComp policy. *See* filing 23-1 at 1. So, while the note undoubtedly derives from EquityComp and the RPA, it is a separately-executed obligation for unpaid insurance premiums. In exchange for the

promissory note, Applied agreed to continue the insurance coverage notwithstanding Top's nonpayment.

There is limited caselaw in Nebraska regarding when, and under what circumstances, a promissory note may be void as against public policy. And for good reason: it rarely is. In *Schuyler Coop. Ass'n v. Sahs*, 755 N.W.2d 802 (Neb. 2008), the plaintiff sued the defendant on an outstanding debt. The parties eventually resolved that dispute by executing several documents, including a settlement agreement and promissory note. Pursuant to the settlement agreement, the defendant agreed to pay the plaintiff $53,072.81 over a set period of time. *Id.* at 804. If the defendant missed a payment, the plaintiff had the "immediate right" to file suit on the promissory note, which the defendant issued in the amount of $70,000.00. *Id.*

When the defendant missed a payment under the settlement schedule, the plaintiff filed suit to enforce the promissory note. *Id.* The defendant, in response, argued that the promissory note was unenforceable as against public policy because it amounted to an "unreasonable penalty[.]" *Id.* at 805. The Nebraska Supreme Court rejected that argument, noting that the viability of the promissory note "[was] not conditioned on the contents of the subsequently executed settlement agreement." *Id.* Rather, the note was an "unconditional promise" to pay a fixed amount at a definite time. *Id.* at 807. As such, the obligation was "conclusive between the parties" and "[could not] be reopened either at law or at equity, except upon clear proof of fraud, or mistake, or of an express understanding that certain matters were left open for future adjustment." *Id.* at 806; *cf. Hansen v. Abbott*, 188 N.W.2d 717, 719 (Neb. 1971).

The same principles apply here. Indeed, Top's responded to the March 2014 invoice by "acknowledging its indebtedness" and "promis[ing] to pay" Applied the amount due. *See* filing 23-1. That promissory note clearly

represented an agreement between Top's and Applied to "settle" the delinquent account. *Schuyler Coop.*, 755 N.W.2d at 806. As in *Schuyler Coop.*, this Court cannot now, in retrospect, reopen or look behind the unconditional agreement based on the violations alleged in Top's answer. *Id.* That is particularly true on these facts, where Top's neither indicates nor alleges fraud or mistake in the issuance of the note. *See id.* Without such allegations, and in light of the specific facts alleged, the Court cannot say that the promissory note is void as against public policy. Accordingly, Top's motion for summary judgment will be denied, and, because there is no material dispute of fact regarding the issuance of the promissory note or Top's nonpayment,[3] Applied's motion will be granted.

That does not mean, of course, that Top's is without a potential remedy. In its amended answer, Top's alleges (among other claims) consumer protection violations and deceptive trade practices. Filing 129 at 26-35. And those claims are premised on the same general allegations at issue here: that EquityComp "violate[s] New Jersey law" by not filing the RPA. Filing 129 at 26, 30. So, while voiding the promissory note is not a viable remedy on these facts, Top's may—or may not—find appropriate relief in its class-action counterclaims (none of which are currently at issue).

As a final matter, Applied moves to strike the declaration (and accompanying attachments) of attorney Aaron Peskin. *See* filing 163; filing 148-1. In light of the Court's findings as set forth above, Applied's motion will be denied as moot.

---

[3] Nor does Top's dispute the $166,202.65 figure provided by Applied. *See* filing 142 at 2. That figure reflects the amount due under the promissory note ($119,645.13) plus accrued interest ($46,557.52).

## CONCLUSION

Therefore, Top's motion for summary judgment will be denied. Applied's cross-motion for summary judgment will be granted, and its motion to strike will be denied as moot. Top's will be ordered to pay Applied the sum of $166,202.65. This case will be referred to the Magistrate Judge for case progression on Top's remaining counterclaims.

IT IS ORDERED:

1. Applied Underwriters' motion for summary judgment ([filing 141](filing 141)) is granted.

2. Applied Underwriters' motion to strike ([filing 163](filing 163)) is denied.

3. Top's motion for summary judgment ([filing 145](filing 145)) is denied.

4. Top's is ordered to pay Applied the sum of $166,202.65.

5. This matter is referred to the Magistrate Judge for case progression.

Dated this 2nd day of August, 2018.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge