IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| APPLIED UNDERWRITERS, INC., a Nebraska Corporation;<br><br>              Plaintiff,<br><br>     vs.<br><br>TOP'S PERSONNEL, INC., A New Jersey Corporation;<br><br>              Defendant. | **8:15CV90**<br><br>**FINDING, RECOMMENDATION AND ORDER** |

Defendant/Counter-Plaintiff Top's Personnel, Inc. ("Top's") initiated this class action lawsuit pursuant to Fed. R. Civ. P. 23, claiming that Plaintiff/Counter-Defendant Applied Underwriters, Inc. ("Applied") unlawfully marketed and sold fraudulent workers' compensation insurance policies in violation of state and federal law. This matter is before the court on Top's motion for class certification. (Filing No. 161). For the reasons stated below, the motion should be denied.

BACKGROUND

Applied is a Nebraska corporation, with its principal place of business in Omaha, Nebraska. Applied markets and sells workers' compensation insurance programs under the names EquityComp and SolutionOne (collectively "the Program"). The Program offers loss-sensitive workers' compensation insurance and profit-sharing policies that Applied has marketed and sold in numerous states since 2007. (Filing No. 217, at CM/ECF p. 18).

The state of New Jersey requires all employers to maintain workers' compensation insurance coverage for employees that suffer injury or death due to

an occupational hazard. (Filing No. 129, at CM/ECF p. 9, ¶ 17; N.J. STAT. ANN. § 34:15-88). New Jersey workers compensation law requires that all workers' compensation policies, together with their classification of risks, premiums, and rules pertaining thereto, in addition to their basis rates and applicable system of merit or schedule rating be filed for approval with the New Jersey Commissioner of Banking and Insurance (the "New Jersey Commissioner") (Id.)

In 2011, Top's purchased an EquityComp policy from Applied. (Filing No. 146, at CM/ECF p. 2). The EquityComp program consists of three separate agreements. (Filing No. 162, at CM/ECF p. 6; Filing No. 217, at CM/ECF p. 18). The first contract is a traditional guaranteed rate workers compensation policy ("GC Policy"), issued by Applied affiliates—Continental Indemnity Company ("Continental") and California Insurance Company ("CIC") (Id.) GC policies are not "loss-sensitive," meaning that premiums charged are not affected by the filing of claims. (Id.) Applied filed this policy with the New Jersey Commissioner and received approval. (Id.)

The second contract is a reinsurance agreement. (Id.)

The third contract is titled a Reinsurance Participation Agreement ("RPA"). (Id.) The RPA is a profit-sharing agreement with Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA") that is loss-sensitive, meaning that premiums fluctuate with the insured's claims activity. (Id.) Under the program, if a participant maintains low workers' compensation insurance claims, it reaps the benefits of correspondingly lower ultimate premium costs. (Filing No. 217, at CM/ECF p. 18). On the other hand, as workers' compensation claims go up, so, too does the participant's ultimate cost (up to a specified maximum). (Id.) Neither the reinsurance agreement nor the RPA is filed with, or approved by, the New

Jersey Commissioner. (Filing No. 162, at CM/ECF p. 6; Filing No. 217, at CM/ECF p. 18).

Top's states that under the EquityComp proposal:

[C]ertain GC Policy information is presented first, but with the qualification that a Profit Sharing Plan, affected through a reinsurance transaction that is separate from the guaranteed cost policies and independently rated, also applies. The aspects of the RPA are then presented, along with an estimated net cost, which contains an estimated minimum cost and maximum cost for a single year, and also for the three-year RPA period. These estimated net costs reflect both premiums paid pursuant to the GC Policy as well as the RPA.
 . . .
This document also includes a scenario worksheet that set forth the highest possible cost and lowest possible cost for Top's.

(Filing No. 162, at CM/ECF p. 7).

Over the course of approximately its first two-years of enrollment, between late 2011 and 2013, Top's received monthly invoices from Applied averaging around $100,000 per month. (Filing No. 129, at CM/ECF p. 21, ¶¶ 62-63; Filing No. 165, at CM/ECF p. 7, ¶¶ 62-63). In December 2013, following a significant rise in its claims incurred under the Program, Top's received an invoice for over $500,000. (Filing No. 129, at CM/ECF p. 21, ¶ 64; Filing No. 165, at CM/ECF p. 7, ¶ 64). Unable to pay this amount in full, in January 2014, Top's executed a promissory note for the invoice's full amount, agreeing to pay $125,000 initially, followed by nine monthly payments of $43,000. (Filing No. 129, at CM/ECF p. 121, ¶ 65; Filing No. 165, at CM/ECF p. 7, ¶ 65).

Top's made its initial agreed payments on the note; but then, finding itself once again unable to pay its invoice, executed a second promissory note for the

approximate sum total of $538,000. (Filing No. 129, at CM/ ECF p. 22, ¶ 67; Filing No. 165, at CM/ECF p. 7, ¶ 67). On the note, Top's "acknowledge[d] its indebtedness" and "promise[d] to pay" the reflected amount. (Filing No. 23-1, at CM/ECF p.1). In 2015, Applied filed suit when Top's failed to pay this obligation. (Filing No. 1).

Top's responded with a motion to dismiss. After several rounds of briefing on the motion, Applied filed an amended complaint. (Filing No. 23). Defendant then filed a second motion to dismiss, which was formally denied on June 16, 2016. (Filing No. 35). On June 30, 2016, Top's filed its Answer and discovery commenced in August 2016. (Filing No. 36).

Following various discovery delays, on January 26, 2018, the court granted Top's leave to amend its answer to include a class action counterclaim and conduct limited class discovery. (Filing No. 127). Top's filed its amended answer with a class counterclaim on February 2, 2018. (Filing No. 129). In early February, the parties filed cross-motions for summary judgment. (Filing No. 141; Filing No. 145).

On August 2, 2018, this court granted Applied's motion for summary judgment, denied Top's' motion, and ordered Top's to pay outstanding payments owed under the May 2014 promissory note in the amount of $166,202.65. (Filing No. 202). Judge Gerrard found the note to be an independently enforceable obligation, but he explicitly left open the question of whether the programs properly adhered to state statutory and regulatory requirements.

On March 2, 2018, Top's filed the instant motion for class certification, seeking certification on behalf of a Nationwide class or, in the alternative, a

statewide New Jersey class. (Filing No. 162, at CM/ECF p. 13). Specifically, Top's seeks certification on behalf of a Nationwide class that includes:

> All individuals or entities in the United States who purchased an EquityComp or SolutionOne workers' compensation insurance policy from Applied Underwriters, Inc. or any of its affiliates, and subsequently executed a promissory note with Applied Underwriters, Inc. or one of its affiliates relating to sums allegedly owed pursuant to either the EquityComp or SolutionOne programs.

(Filing No. 162, at CM/ECF p. 13).

In the alternative, Top's seeks class certification of a New Jersey statewide class, encompassing:

> All individuals or entities in the state of New Jersey who purchased an EquityComp or SolutionOne workers' compensation insurance policy from Applied Underwriters, Inc. or any of its affiliates, and subsequently executed a promissory note with Applied Underwriters, Inc. or one of its affiliates relating to sums allegedly owed pursuant to either the EquityComp or SolutionOne programs.

(Filing No. 162, at CM/ECF p. 13).

Top's seeks certification of its counterclaims based on the allegedly "unlawful and deceptive acts" of Applied "relating to its sale of unlawful workers' compensation insurance policies to employers across the United States." (Filing No. 162, at CM/ECF p. 2). Top's contends that Applied unlawfully collected monies from Top's and other "similarly situated insured-employers through various promissory notes" issued in accordance with the underlying sale of its allegedly unlawful workers' compensation insurance programs. (Filing No. 162, at CM/ECF p. 2-3).

Top's seeks certification of its claims on behalf of the classes as follows:

On behalf of the Nationwide class, Top's seeks certification of the claims for violations of the Nebraska Consumer Protection Act (NEB. REV. STAT. §§ 59-1601, *et seq*.) ("NCPA"), and the Nebraska Uniform Deceptive Trade Practices Act (NEB. REV. STAT. §§ 87-301, *et seq*.) ("NUDTPA"), in addition to certification of the claims for rescission or unjust enrichment. (Filing No. 162, at CM/ECF p. 13).

In the alternative, on behalf of the New Jersey subclass, Top's seeks certification of the claim for violations of the New Jersey Consumer Fraud Act (N.J. STAT. ANN. §§ 56:8-1, *et seq*.) ("NJCFA"), in addition to certification of the claims for rescission or unjust enrichment. (Filing No. 162, at CM/ECF p. 13).

The court analyzes each class certification sought by Top's individually, in turn.

ANALYSIS

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Store, Inc. v. Dukes, 564 U.S. 338, 348 (2011). A Plaintiff seeking leave to serve as a class representative and obtain class certification has the burden of proving the requirements of Rule 23 are met. Coleman v. Watt, 40 F.3d 255, 258–59 (8th Cir. 1994).

Under Federal Rule of Civil Procedure 23(a), four threshold requirements are applicable to all class actions: (1) numerosity—"the class is so numerous that joinder of all members is impracticable"; (2) commonality—"there are questions of law or fact common to the class;" (3) typicality—"the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and, (4)

adequacy of representation—"the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Once each element of Rule 23(a) is demonstrated, a class action may be maintained so long as at least one of the Rule 23(b) sub-parts is satisfied. Fed. R. Civ. P. 23(b)(1)-(3).

### A. Fed. R. Civ. P. 23(a).

(i)    Numerosity.

When assessing Rule 23(a)(1)'s numerosity requirement, the court must determine "whether the class is so numerous that joinder of all members is impracticable." Paxton v. Union Nat. Bank, 688 F.2d 552, 559 (8th Cir. 1982). Additionally, the court may consider the nature of the case, the size of the individual claims and relative inconvenience of trying individual suits, and "any other factor relevant to the practicability of joining all the putative class members." Klein v. TD Ameritrade Holding Corp., 327 F.R.D. 283, 292 (D. Neb. 2018).

*Nationwide class – Numerosity.*

Top's argues that based on this court's Harris decision, "upon information and belief",[1] the numerosity requirement is satisfied because "[w]hile the exact number of putative Class members is uncertain, it will certainly surpass the number

---

[1] Top's contends that "hundreds of Promissory Notes are executed on a yearly basis" based on testimony provided by an Applied account manager that she alone 'issued maybe between five and ten [Promissory Notes] a month' and that Applied employed 'between eight and twelve' account managers during this time." (Filing No. 162, at CM/ECF p. 16).

[89] in Harris." (Filing No. 162, at CM/ECF p. 14). See Harris v. D. Scott Carruthers & Assoc., 270 F.R.D. 446, 450 (D. Neb. 2010). To this end, Top's argues the class consists of "hundreds if not thousands of employer-insureds who are geographically dispersed and who purchased Applied's unlawful insurance Programs and executed a Promissory Note." (Filing No. 162, at CM/ECF pp. 15-16).

Applied counters that Top's has failed to establish numerosity under Rule 23(a)(1). First, Applied argues that Top's estimate is purely speculative because "Top's has offered *no* evidence of the actual number of putative class members," and Top's extrapolates a range in the "hundreds if not thousands" from the testimony of a sole Applied employee. (Filing No. 217, at CM/ECF p. 31-35)(emphasis in original). Second, Applied contends Top's fails to account for the class members who must be left out: "[a] substantial number of potential class members will have to be excluded from the proposed class because either they signed class action waivers, their claims are barred by applicable statutes of limitations, or they are already members of other putative classes that may be certified." (Filing No. 217, at CM/ECF p. 22). Lastly, Applied argues that Top's has failed to demonstrate that joinder is impracticable. (Filing No. 217, at CM/ECF pp. 31-35).

The court agrees that Top's has failed its burden to establish numerosity, as to the Nationwide class. Although numerosity does not require an exact number of the class size, it does necessitate a showing of approximate size. See e.g., Belles v. Schweiker, 720 F.2d 509, 515 (8th Cir. 1983). Further, a class representative must demonstrate that joinder will be impracticable. Klein, 327 F.R.D. at 292 ("[a] putative representative may fail its burden to show numerosity where he or she does not actually identify even the approximate size of the class or demonstrate

8

the impracticability of joinder."). Top's offers little to no evidence in support of an actual number of putative class members, nor does it convincingly argue that joinder would be impracticable. (Filing No. 162, at CM/ECF pp. 14-15).

Further, Top's reliance on this court's Harris decision is misapplied. No rigid rule of thumb has been established in the Eighth Circuit as to how many potential class members suffice to satisfy the numerosity requirement. Emanuel v. Marsh, 828 F.2d 438, 444 (8th Cir.1987). Instead, the numerosity requirement requires "examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. of Northwest, Inc. v. E.E.O.C., 446 U.S. 318, 330 (1980); Caroline C. v. Johnson, 174 F.R.D. 452, 462–63 (D.Neb.1996) (noting that "[n]o absolute or arbitrary number satisfies the numerosity requirement.").

In Harris, the court found that numerosity had been established where (1) the potential number of class members was identified; and (2) it was, in turn, established that joining class members would be unduly difficult. Harris, 270 F.R.D. 446 at 450. Thus far, the only evidence Top's has identified in the record shows 36 program participants in New Jersey and one program participant in Nebraska that executed promissory notes between 2011 and the present. (Filing No. 218-1, at CM/ECF p. 285; Filing No. 220, at CM/ECF p. 13).

Top's relies on the same unsubstantiated numbers as discussed above in arguing that joinder is impracticable, again failing to consider that some putative members are already litigating through other class proceedings or have signed

class action waivers,[2] or have claims that are now time-barred.[3] (See Filing No. 218-2, at CM/ECF p. 7, ¶ 20). Moreover, Top's has not addressed the size of the individual claims, nor does it offer a compelling argument as to the inconvenience of trying individual suits, both of which are factors relevant in deciding whether joinder is a viable option. Boswell v. Panera Bread Co., 311 F.R.D. 515, 527 (E.D. Mo. 2015).

Upon consideration of these factors, the court concludes that the proposed Nationwide class of "hundreds if not thousands" of geographically-dispersed individuals fails the numerosity requirement.

*New Jersey subclass – Numerosity.*

On similar grounds, Top's has also failed to establish the numerosity requirement for the New Jersey subclass. Top's contends that the at least "36 program participants from New Jersey" "is sufficient—from a pure numbers standpoint—to satisfy the numerosity requirement under Rule 23(a)(1)." (Filing No. 220, at CM/ECF p. 15). Further, Top's argues that joinder of the New Jersey subclass will be impracticable because of "fear of retaliation by Applied, especially

---

[2] The record reflects that there are putative class actions pending in California and New York, covering the states' respective employer participants, in addition to over 80 individual actions, arbitrations, and administrative proceedings in other states. (See Filing No. 218-1, at CM/ECF p. 2, ¶ 2).

The record further reflects that the RPAs are not uniform across the proposed class, and some versions contain class action waivers, arbitration clauses, and/or mandatory forum selection clauses. (Filing No. 218-2, at CM/ECF p. 7, ¶ 20.)

[3] Applied started marketing and selling the programs in 2007, which will bar some members participation by applicable statute of limitations. (Filing No. 217, at CM/ECF p. 18).

for those currently enrolled in EquityComp or SolutionOne, or lack of class member financial resources." (Filing No. 220, at CM/ECF p. 16-17).

The court rejects these arguments in turn. First, as discussed above, Top's fails to undertake an analysis of the specific facts that weigh against joinder's impracticability. Second, the limited basis upon which Top's does argue for joinder's impracticability is unconvincing. As discussed in further depth below, the 80 individual lawsuits, arbitrations, and administrative actions that have already been initiated against Applied demonstrates the unlikelihood that class member financial resources or fear of retaliation present an obstacle, sufficient to preclude joinder.

Top's has failed to establish numerosity as to the New Jersey subclass.

      ii.    <u>Commonality.</u>

Under Rule 23(a)(2), a party seeking class certification must demonstrate common class wide "questions of law or fact." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." Id. at 350. The courts' Rule 23(a) analysis will frequently entail "overlap with the merits of the plaintiff's underlying claim . . . because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Comcast Corp. v. Behrend, 569 U.S. 27, 33–34 (2013).

> What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide

proceeding to generate common answers apt to drive the resolution
of the litigation. Dissimilarities within the proposed class are what
have the potential to impede the generation of common answers.

Wal-Mart Stores, 564 U.S. at 350 (internal quotations omitted).

Top's contends "in this case there are multiple common questions of law and
fact—all of which focus on Applied's conduct in selling unlawful workers'
compensation insurance Programs and issuing to Class members related
Promissory Notes under these Programs." (Filing No. 162, at CM/ECF p. 18). Top's
alleges these common questions to include:

- whether the insurance scheme and products offered by Applied are illegal;
- whether Applied's failure to file the RPA with state regulators renders it (and
  the subsequent Promissory Note) void or voidable as a matter of law;
- whether Applied violated New Jersey law by failing to file the RPA with state
  regulators and obtain the regulators' approval;
- whether the rates and and/or terms of the Programs should be rescinded as
  to Top's and the Class;
- whether Applied's conduct violates state consumer protection laws;
- whether Applied's sale of illegal or invalid workers' compensation insurance
  is an unfair, false, misleading, or deceptive act in the conduct of any trade
  or commerce;
- whether Top's and other class members were forced to execute Promissory
  Notes when they inevitably fell behind on the exorbitant fees charged
  pursuant to Applied's insurance Programs; and
- whether Top's and Class members have been injured by this conduct,
  entitling them to compensatory damages, equitable relief, and other relief.

(Filing No. 162, at CM/ECF p. 18). Top's argues these questions are "more than
sufficient" to satisfy commonality's "very light burden . . . that a plaintiff can typically
easily satisfy." (Filing No. 162, at CM/ECF p. 18).

*Nationwide class – Commonality.*

12

Top's fails to demonstrate how the above-noted common questions will generate common answers. Rather, the answers will necessarily require a state-by state choice-of-law analysis, with the putative members' entitlement to recovery, if any, dependent upon the respective states' insurance and consumer protection laws. In re St. Jude Medical, Inc., 425 F.3d 1116 (8th Cir. 2005) ("[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules.").

Although the contested promissory notes contain a choice-of-law provision in favor of Nebraska, this clause does not, *ipso facto* establish a governing body of law applicable to all class members. (See, Filing No. 220, at CM/ECF pp. 27-28). As Top's itself argues, the "onerous" RPA terms are unenforceable because they provide "for the application of Nebraska law, even though the vast majority of New Jersey insureds have no connection to Nebraska and New Jersey has a strong public policy in favor of the application of its own laws." (Filing No. 129, at CM/ECF pp. 13-14).

The enforceability of the Nebraska choice-of-law provision presents a "common question" with no "capacity for a classwide proceeding to generate common answers." Wal-Mart Stores, 564 U.S., at 350. As a threshold matter, enforceability of Applied's choice-of-law provision will inevitably hinge on application of state-specific contract law. This will require individualized analysis, ultimately mandating application of various individual state insurance and consumer protection laws, and in effect, the varied substantive rights of class members.

To avoid "constitutional injury to out-of-state plaintiffs," the court must apply an individualized choice-of-law analysis to each plaintiff's claim in a class action. In re St. Jude Medical, Inc., 425 F.3d 1116 (8th Cir. 2005) (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 822-23 (1985). The plaintiff "must show, prior to class

certification, that the difference in state laws . . . are nonmaterial as to [the] Rule 23(b)(3) class." Jarrett v. Panasonic Corp. of North Am., 8 F.Supp.3d 1074, 1087 (E.D. Ark. 2013).

Top's has failed to undertake the necessary choice-of-law and conflict-of-law analysis for Nebraska and New Jersey, and it wholly ignores the remaining state laws implicated by an alleged Nationwide class. Instead, Top's argues simply that, "Applied made the decision to include the choice of law provision in favor of Nebraska in its standard Promissory Note. As such, Nebraska law applies." (Filing No. 220, at CM.ECF p. 32).

Certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160–61 (1982). "Numerous courts have held that a plaintiff's failure satisfactorily to address the choice of law issues in a proposed national class action, by itself, warrants denial of the certification motion." McLaughlin on Class Actions § 5:46.

The court need not go further to find that Top's has failed the requisite constitutional analysis to certify a Nationwide class. Top's failure to conduct any choice-of-law analysis necessarily precludes a requisite finding of commonality.

*New Jersey subclass – Commonality.*

As to the New Jersey subclass, Applied argues that "[w]hether the Program should be rescinded as to any given class member . . . is an inherently individualized question that must take into account both the relevant law—i.e., was Applied's conduct unlawful under the state's insurance or consumer protection

14

laws in the first place—and the specific circumstances facing each participant." (Filing No. 217, at CM/ECF p. 217). In its denial of class certification in an analogous class action pending against Applied, the Eastern District of California found commonality does not exist, reasoning:

> [S]ome clients 'don't want to press for illegality, they want to press for enforcement of the contract because they get greater defense by enforcing it rather than declaring it to be illegal.'
>
> It is also certainly possible . . . that many participants do not feel the need to file a lawsuit because they paid less money in premiums under the program than they would have if they had purchased guaranteed cost policies. Even if every putative class member would still be entitled to restitution, many program participants could view a lawsuit as unnecessary given these savings.

(Filing No. 223-1, at CM/ECF pp. 14-15).

Even assuming, without deciding, that New Jersey law will apply to govern the claims of the entire New Jersey subclass, necessary individualized factual inquiries will preclude common answers "apt to drive the resolution of the litigation." Dukes, 564 U.S. at 350. For example, the undisputed elements of an NJCFA claim include: (1) unlawful conduct by the defendant; (2) ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and plaintiff's ascertainable loss. (Filing No. 220, at CM/ECF p. 27; Filing No. 217, at CM/ECF pp. 44-45).

Whether class members suffered an "ascertainable loss," an essential element of any cognizable claim under the NJCFA, will depend on circumstances unique to each putative class member. On this basis alone, the putative class members' NJCFA claims are not subject to classwide proof, and the commonality requirement fails for the New Jersey subclass.

      iii.    <u>Typicality.</u>

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Harris v. D. Scott Carruthers & Assoc. 270 F.R.D. 446, 451 (D. Neb. 2010). Typicality exists if there are other members of the class who "have the same or similar grievances as the plaintiff." Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996). The typicality requirement is not met "where the question of liability can only be ascertained on an individualized inquiry for each class member." Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1004-05 (8th Cir. 2004) "The commonality and typicality requirements of Rule 23(a) tend to merge." Falcon, 457 U.S. at 157, n.13.

*Nationwide class and New Jersey subclass – Typicality.*

Many of the same factors that render the commonality requirement unmet as to both proposed classes apply equally to the typicality requirement. Here, the "question of liability" will require "an individualized inquiry" for each plaintiff as to: (1) the applicable state law (as discussed above); and (2) the actual harm, if any, incurred.

Top's contends that "Top's and Class members are pursuing the same claims premised on the same theories based on the same alleged misconduct by Applied." (Filing No. 162, at CM/ECF p. 19) Thus, Top's argues that "typicality is inherent in the class definition, i.e., each of the Class members procured the same exact insurance Program and executed virtually identical (albeit with respect to value) Promissory Notes." (<u>Id.</u>)

The court rejects this argument. From the outset, Top's fails to establish that other class members suffered similar grievances resulting from their program participation. Namely, some participants may have incurred no injury at all. Based on the variances of each participant's unique circumstances, it is plausible that under the profit-sharing aspect of the Program some class members fared better than they would have under a standard GC policy, or the alternative. These participants will presumably not wish to have their contracts under the Program rescinded.

Additionally—as to a Nationwide class, materially divergent state insurance and consumer protection laws, statute-of-limitations defenses, and class-action-waiver enforceability vitiate typicality.

Accordingly, the typicality requirement as to both the Nationwide class and the New Jersey subclass is not met.

iv.    <u>Adequacy.</u>

*Nationwide class and New Jersey subclass – Adequacy.*

Under Fed. R. Civ. P. 23(a)(4), Top's must show:

(1)    the representatives and their attorneys are able and willing to prosecute the action completely and vigorously; and

(2)    each representatives' interest is sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge.

Carson P. ex rel. Foreman v. Heineman, 240 F.R.D. 456, 509 (D. Neb. 2007).

The named class representative and its attorneys have demonstrated their willingness to vigorously litigate the matter, as to both a Nationwide class or a New Jersey subclass. However, its failure to demonstrate that the putative class members' claims are sufficiently similar such that their goals and viewpoints will align leaves Rule 23(a)(4)'s adequacy requirement unmet.

For the above reasons, Top's has failed its necessary burden to demonstrate numerosity, commonality, typicality, and adequacy as to both the proposed Nationwide class or the alternative New Jersey subclass. See, Fed. R. Civ. P. 23(a).

## B. Fed. R. Civ. P. 23(b)

A class action may be certified only where each of the four prerequisites have been established under Rule 23(a) and it fits within a subsection of Rule 23(b). Fed. R. Civ. P. 23(a)-(b).

Top's seeks class certification under Rule 23(b)(3). Two requirements are encompassed under this subsection, commonly known as the "predominance" and the "superiority" requirements. Each shall be analyzed in turn as to the proposed classes.

i.      <u>Superiority Requirement.</u>

The superiority requirement necessitates that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The following factors are relevant to this analysis:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

*Nationwide class and New Jersey subclass.*

"A significant consideration in evaluating superiority is whether the claims are too small to be litigated individually." Powers v. Credit Mgmt. Serv., Inc., 313 F.R.D. 103 (D. Neb. 2016); See also, Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")(internal quotations omitted).

The Eastern District of California recently denied a motion to certify a class of California participants in Applied's EquityComp and SolutionOne worker's compensation program, reasoning:

In Amchem, the Supreme Court observed that in including the superiority requirement the Advisory Committee was '[s]ensitive to the competing tugs of individual autonomy for those who might prefer to go it alone or in a smaller unit, on the one hand, and systemic efficiency on the other.' The Court further noted that the value of each member's claims affects the balance between these two competing considerations. Where the stakes are high and each potential class member can take care of itself, the interest in individual control

19

increases. Given the monetary incentive and each putative class member's presumed ability to bring its own action, this factor weighs against a finding of superiority.

Shasta Linen Supply Inc. v. Applied Underwriters, No. 2:16-cv-1211, 2019 WL 358517, at *4 (E.D. Cal. Jan. 29, 2019) (internal citations and quotations omitted).

Here, Top's concedes that where putative class members have suffered damages, they will be significant because the business-participants have paid "large sums of money" to Applied under the contested promissory notes. (Filing No. 162, at CM/ECF p. 38). As such, program participants have a greater interest in controlling separate litigation, as they will not be disincentivized by a *de minimis* recovery.

The extent and nature of other pending litigation further weighs against a finding of superiority as to both proposed classes.

If the court finds that several other actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate since, unless the other suits can be enjoined, ... a Rule 23 proceeding only might create one more action.... Moreover, the existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action. Rather than allowing the class action to go forward, the court may encourage the class members who have instituted the Rule 23(b)(3) action to intervene in the other proceedings.

Zinser v. Accufix Research Ins., Inc. 253 F.3d 1180, 1191 (9th Cir. 2001) (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice and Procedure § 1780 at 568–70 (2d ed.1986) (footnotes omitted).

Here, the record shows that over 80 individual lawsuits, arbitrations, and administrative actions have already been initiated in this matter, and that an additional class action is pending in New York. (Stephens Decl. ¶ 2). Further, as the Shasta court found, rejecting class certification in a prior-pending California action, the extent and nature of these proceedings appear to vary considerably:

> The issue(s) in these matters differ from each other in many respects. Some plaintiffs have brought as few as one claim and merely seek refund of money paid. Other plaintiffs have brought multiple claims and ask that courts enforce various parts of their agreements with defendants. Lastly, the procedural posture in these actions varies significantly. Some matters have already concluded, others are on appeal, and a few, like this one, have not even proceeded to trial yet.

Shasta, 2019 WL 358517, at *4.

The multitude of separate individual actions pending in the instant matter further evidences that class members wish to control their own claims. 1 McLaughlin on Class Actions § 5:65 ("[o]rdinarily, the pendency of multiple individual actions concerning the same subject matter weighs against certification, at least of a litigation class, as certifying a class would only expand the controversy.").

Finally, the complexities of this matter, as discussed under Rule 23(a), would render class action treatment unmanageable. Common issues will be dwarfed by individual issues of law and fact, particularly regarding choice- and conflict-of-law issues. Accordingly, a class action is not superior to other methods of resolution for fairly and efficiently adjudicating the putative class members' dispute. See, Walsh v. Ford Motor Co, 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("to establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that

class certification does not present insuperable obstacles.'") (quoting re Asbestos School Litigation, 789 F.2d 996 (3rd Cir. 1986); See also, Porter v. Nationscredit Consumer Discount Co., 229 F.R.D. 497, 500 (E.D. Pa. 2005) ("The Plaintiff class and subclass fail to meet the superiority standard because a class action is not the best method for ensuring a fair and efficient adjudication of this particular controversy . . . due to numerous individual issues of fact.).

ii.    Predominance Requirement.

*Nationwide class and New Jersey subclass.*

Under the predominance requirement, a district court may certify a class where it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The Supreme Court has held that the predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement. Amchem Products, Inc., v. Windsor, 521, U.S. 591, 623-24 (1997) (holding that even where common issues to the class satisfied Rule 23(a)'s commonality requirement, it didn't rise to meet Rule 23(b)(3)'s more demanding standard).

Here, Top's cannot meet Rule 23(a)'s commonality requirement much less Rule 23(b)(3)'s predominance requirement. The court therefore finds the predominance requirement unmet for both the Nationwide class and the New Jersey subclass.

To summarize, the court finds class certification improper as to all proposed classes and corresponding claims. While Top's requests leave "to secure another plaintiff," (Filing No. 220, at CM/ECF p. 25, n. 11), replacing the named plaintiff will

not remedy the previously discussed inherent defects in the proposed class certification.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States Chief District Judge, pursuant to 28 U.S.C. § 636(b), that the Plaintiff's amended motion for class certification, (Filing No. 161), should be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 6th day of February, 2019.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge